ACCEPTED
03-13-00817-CV
5226136
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/11/2015 10:45:05 AM
JEFFREY D. KYLE
CLERK

# BYRD DAVIS FURMAN & ALDEN, L.L.P.

ATTORNEYS AND COUNSELORS

EST.'D 1959

Don L. Davis◆†‡
dondavis@byrddavis.com

Robert C. Alden †
ralden@byrddavis.com

Kevin O. Henrichson
khenrichson@byrddavis.com
_____

*Of Counsel*
Derek L. Davis
ddavis@byrddavis.com
_____

L. Tonnett Byrd
*(1921 – 2007)*
Jack C. Eisenberg
*(1927-2011)*
David H. Walter
*(1948 – 2003)*

◆*Board Certified
Personal Injury Trial Law,
Texas Board of Legal
Specialization*

†*AV Rated by
Martindale-Hubbell*

‡*Licensed in Texas
and Colorado*

May 11, 2015

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

5/11/2015 3:10:05 PM

JEFFREY D. KYLE
Clerk

Jeffrey D. Kyle, Clerk
Court of Appeals, Third District of Texas
P.O. Box 12547
Austin, Texas 78711-2547

> Re:   Court of Appeals Number:   03-13-00817-CV;
>        Trial Court Case Number:  D-1-GN-13-001183
>
> *Style:  Seton Family of Hospitals d/b/a Seton Medical Center,
> Appellant v. Beverly J. Haywood, Appellee*

Dear Mr. Kyle:

Pursuant to Texas Rule of Appellate Procedure 38.7, Appellee Beverly J. Haywood files this letter to alert the Court that today the Texas Supreme Court issued a unanimous opinion in Ross v. St. Luke's Hospital, No. 13-0439 (Tex. May 1, 2015), one of the primary cases on which Appellant relies, and about which the Court asked several questions at oral argument.  I believe the Texas Supreme Court's opinion in Ross is dispositive for this case.  I have attached a copy of that opinion to this letter brief.

As a reminder, Ms. Haywood was visitor to Seton Hospital when she was knocked to Seton Hospital when she was injured by an automatic door that was activated by a nurse.   The plaintiff in Ross was also a visitor to a hospital when she was injured in a "slip and fall."  As in this case, the hospital in Ross relied on the word "safety" in the definition of a "health care liability claim" to argue that the plaintiff's premises liability claim was a health care liability claim subject to the Texas Medical Liability Act, and therefore subject to the requirement of an expert

report. The Fourteenth Court of Appeals held in <u>Ross</u> that "a connection between the act or omission and health care is unnecessary for purposes of determining whether Ross brings an HCLC. An allegation pertaining to safety, standing alone and broadly defined, is sufficient." <u>Ross v. St. Luke's Episcopal Hospital</u>, 2013 Tex. App. LEXIS 2796 at *3 (Tex. App.— Houston [14th Dist.] March 19, 2013)

In today's opinion, the Texas Supreme Court reversed <u>Ross</u>, and concluded that "the safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care. And if it were not so, the broad meaning of "safety" would afford defendant health care providers a special procedural advantage in the guise of requiring plaintiffs to file expert reports in their suits regardless of whether their cause of action implicated the provision of medical or health care. We do not believe the Legislature intended the statute to have such arbitrary results. . . . Thus we conclude that for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." <u>Ross v. St. Luke's Hospital</u>, No. 13-0439 at 12 (Tex. May 1, 2015).

On pages 13 through 14, the Court listed "non-exclusive considerations" for analyzing whether a claim is substantively related to the defendant's providing of medical or health care:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;
5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;
6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or
7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

None of these considerations apply to the facts in this case.

Very truly yours,

BYRD DAVIS FURMAN & ALDEN, L.L.P.

Robert C. Alden
ralden@byrddavis.com
State Bar No. 00979680
ATTORNEY FOR APPELLEE

## CERTIFICATE OF SERVICE

Pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure, I hereby certify that a true and correct copy of the foregoing letter has been sent via e-mail, to the following counsel of record on this 11st day of May, 2015:

Emily J. Davenport
REED, CLAYMON, MEEKER & HARGETT, P.C.
5608 Parkcrest Drive, Suite 200
Austin, TX  78731
Phone:  512-660-5960
Fax:  512-660-5979
edavenport@rcmhlaw.com

Ken Slavin
KEMP SMITH LLP
221 N. Kansas
Suite 1700
El Paso, Texas 79901
KSlavin@kempsmith.com


/s/ Robert C. Alden
Robert C. Alden


## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief has been compiled using a computer program in Word with 14-point font conventional typeface for the body of the brief.  Excluding the portions of the brief exempted pursuant to Rule 9.4 of the Texas Rules of Appellate Procedure, this brief contains 5,365 words.


/s/ Robert C. Alden
Robert C. Alden

# IN THE SUPREME COURT OF TEXAS

══════════
No. 13-0439
══════════

LEZLEA ROSS, PETITIONER,

v.

ST. LUKE'S EPISCOPAL HOSPITAL, RESPONDENT

═══════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
═══════════════════════════════════════════

**Argued November 5, 2014**

JUSTICE JOHNSON delivered the opinion of the Court.

JUSTICE LEHRMANN filed a concurring opinion, in which JUSTICE DEVINE joined.

JUSTICE BROWN did not participate in the decision.

In this case a visitor to St. Luke's Episcopal Hospital sued the hospital on a premises liability theory after she slipped and fell near the lobby exit doors. The issue is whether her suit is a health care liability claim under the Texas Medical Liability Act. *See* TEX. CIV. PRAC. & REM. CODE ch. 74. The trial court and court of appeals concluded that it is. We hold that it is not, because the record does not demonstrate a relationship between the safety standards she alleged the hospital breached—standards for maintaining the floor inside the lobby exit doors—and the provision of health care, other than the location of the occurrence and the hospital's status as a health care provider.

We reverse and remand to the trial court for further proceedings.

## I. Background

Lezlea Ross accompanied a friend who was visiting a patient in St. Luke's Episcopal Hospital. Ross was leaving the hospital through the lobby when, as she approached the exit doors, she slipped and fell in an area where the floor was being cleaned and buffed. She sued St. Luke's and Aramark Management Services, a company that contracted with the hospital to perform maintenance services, on a premises liability theory. Aramark is not a party to this appeal.

After Ross filed suit we decided *Texas West Oaks Hospital, L.P. v. Williams*, 371 S.W.3d 171 (Tex. 2012). There we held, in part, that when a safety standards-based claim is made against a health care provider, the Texas Medical Liability Act (TMLA), TEX. CIV. PRAC. & REM. CODE ch. 74, does not require the safety standards to be directly related to the provision of health care in order for the claim to be a health care liability claim (HCLC). *Williams*, 371 S.W.3d at 186. Relying on *Williams*, the hospital asserted that Ross's claim was an HCLC and moved for dismissal of her suit because she failed to serve an expert report. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b) (requiring dismissal of an HCLC if a claimant fails to timely serve an expert report); *Williams*, 371 S.W.3d at 186.

The trial court granted the motion to dismiss. The court of appeals affirmed. *Ross v. St. Luke's Episcopal Hosp.*, ___ S.W.3d ___ (Tex. App.—Houston [14th Dist.] 2013). The appeals court concluded that under *Williams* it is not necessary for any connection to exist between health care and the safety standard on which a claim is based in order for the claim to come within the TMLA. *Id.* at ___.

2

Ross asserts that the lower courts erred because claims based on departures from "accepted standards of safety" do not come within the provisions of the TMLA unless there is at least some connection between the standards underlying the allegedly negligent actions and the provision of health care, even if they are not *directly* related. She then argues that her claims are not HCLCs because the hospital's alleged negligence is completely unrelated to the provision of health care.

The hospital responds with three arguments. It first urges that we lack jurisdiction. *See* TEX. GOV'T CODE § 22.001(a)(2), (3), (6). It next asserts that even if we have jurisdiction, Ross waived the issue of whether her claim is an HCLC because she failed to properly brief and urge it in the court of appeals. Third, the hospital addresses the merits by asserting that the court of appeals correctly held that a safety standards-based claim need not be related to health care to fall within the TMLA's provisions, but in any event Ross's claims are related to accepted standards of patient safety because she fell inside the hospital.

We first address our jurisdiction. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (noting that if a court does not have jurisdiction, its opinion addressing any issues other than its jurisdiction is advisory).

## II. Jurisdiction

Texas Civil Practice and Remedies Code § 51.014(a)(10) permits an appeal from an interlocutory order granting relief sought by a motion to dismiss an HCLC for failure to file an expert report. Generally, the court of appeals' judgment is final on interlocutory appeals. *See* TEX. GOV'T CODE § 22.225(b)(3). However, we have jurisdiction if the justices of the court of appeals disagree

3

on a question of law material to the decision, or if a court of appeals holds differently from a prior decision of another court of appeals or this Court. *Id.* § 22.225(c).

Ross asserts that this Court has jurisdiction because the court of appeals' opinion in this case conflicts with *Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782 (Tex. App.—Texarkana 2013, pet. denied). In that case, Bobby Twilley, the director of plant operations for a medical center, asserted premises liability claims against his employer after he fell from a ladder and also tripped over a mound of hardened cement. *Id.* at 783. The medical center moved for dismissal under the TMLA because Twilley failed to file an expert report. *Id.* at 783-84. The trial court denied the motion and the medical center appealed, arguing that even though Twilley's claims were unrelated to the provision of health care, under *Williams* they still fell within the ambit of the TMLA. The court of appeals interpreted *Williams* as holding that a safety standards-based claim need not be directly related to the provision of health care to be an HCLC. *Id.* at 789. The court stated, however, that it did not understand *Williams* to hold that a safety standards claim falls under the TMLA when the claim is completely untethered from health care. *Id.* The appeals court concluded that at least an indirect relationship between the claim and health care is required and, because Twilley's claims did not have such a relationship, an expert report was not required. *Id.* at 785.

In this case the court of appeals held that under *Williams* "a connection between the act or omission and health care is unnecessary for purposes of determining whether Ross brings an HCLC." *Ross*, ___ S.W.3d at ___. The hospital asserts that the decision of the court of appeals and *Twilley* do not conflict. But, for purposes of our jurisdiction, one court holds differently from another when

4

there is inconsistency in their decisions that should be clarified to remove unnecessary uncertainty in the law. TEX. GOV'T CODE § 22.001(e). As other courts of appeals have noted, *Ross* and *Twilley* are inconsistent in their interpretations of *Williams* and the TMLA, leaving uncertainty in the law regarding whether a safety standards-based claim must be related to health care. *See, e.g.*, *Weatherford Tex. Hosp. Co. v. Smart*, 423 S.W.3d 462, 467-68 (Tex. App.—Fort Worth 2014, pet. filed); *DHS Mgmt. Servs., Inc. v. Castro*, 435 S.W.3d 919, 922 & n.3 (Tex. App.—Dallas 2014, no pet.). That being so, we have jurisdiction and move to the hospital's waiver claim.

### III.  Waiver

The hospital argues that Ross waived any challenge to her claim being classified as an HCLC by failing to argue the point or cite relevant authority in the court of appeals. We disagree.

A brief in the court of appeals "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(I). Failure to provide citations or argument and analysis as to an appellate issue may waive it. *See ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010).

In her court of appeals brief, Ross discussed the purpose of the TMLA and asserted that classifying her claim as an HCLC would conflict with the Government Code. *See* TEX. GOV'T CODE § 311.021(3) (providing that when a statute is enacted, there is a presumption that "a just and reasonable result is intended"). The court of appeals implicitly determined that Ross's citations and argument were enough to avoid waiver because it addressed the issue. *See Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004) (concluding that an argument in the court of appeals was not waived and noting that "we have instructed the courts of appeals to construe

5

the Rules of Appellate Procedure reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to effect the purpose of a rule" (quoting *Verburgt v. Dorner*, 959 S.W.2d 615, 616-17 (Tex. 1997))). We agree with the court of appeals that Ross did not waive the issue.

## IV. Health Care Liability Claims

The merits of the appeal require us to review the lower courts' construction of the TMLA. Under such circumstances our review is *de novo*, *Williams*, 371 S.W.3d at 177, and our goal is to give effect to legislative intent. *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625, 631 (Tex. 2013). In determining that intent we look first and foremost to the language of the statute. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Determining legislative intent requires that we consider the statute as a whole, reading all its language in context, and not reading individual provisions in isolation. *See Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 51 (Tex. 2014).

The TMLA defines a health care liability claim as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

6

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). This Court construed "safety" under the prior statute according to its common meaning as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (quoting BLACK'S LAW DICTIONARY 1336 (6th ed. 1990)). We also recognized that the Legislature's inclusion of the word "safety" in the statute expanded the statute's scope beyond what it would be if the statute only included the terms medical care and health care. *Id.* The Court explained its disagreement with the position of Chief Justice Jefferson who, in a concurring opinion, argued that some of the patient's claims arising from an assault by another patient were premises liability claims:

> Rubio is not complaining about an unlocked window that gave an intruder access to the facility or a rickety staircase that gave way under her weight. All of her claims arise from acts or omissions that are inseparable from the provision of health care. We do not distinguish Rubio's health care claims from premises liability claims "simply because the landowner is a health care provider" but because the gravamen of Rubio's complaint is the alleged failure of Diversicare to implement adequate policies to care for, supervise, and protect its residents who require special, medical care.

*Id.* at 854.

The Legislature added the phrase "or professional or administrative services directly related to health care" to the definition of health care liability claim in 2003. *Compare* Act of May 30, 1977, 65th Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041, *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884 (absence of language), *with* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13) (language added). After that statutory amendment we addressed the "safety" part of the definition in *Omaha Healthcare Ctr., L.L.C. v. Johnson*, 344

7

S.W.3d 392 (Tex. 2011), and *Harris Methodist Fort Worth v. Ollie*, 342 S.W.3d 525 (Tex. 2011). Although the claims in both cases alleged general negligence, they were HCLCs because the underlying nature of the claims involved violations of safety standards directly related to the provision of health care, including protecting patients. *Johnson*, 344 S.W.3d at 394-95 (nursing home patient's death caused by a brown recluse spider); *Ollie*, 342 S.W.3d at 527 (post-operative patient's slip and fall on a wet bathroom floor). But given that the claims were based on injuries to patients and *were* directly related to the provision of health care, we did not address the issue of whether safety standard-based claims *must* be directly related to health care in order for them to be HCLCs. *Johnson*, 344 S.W.3d at 394 n.2; *Ollie*, 342 S.W.3d at 527 n.2.

The next year we considered whether a psychiatric technician's claims for injuries in an altercation with a patient were HCLCs. *Williams*, 371 S.W.3d at 181. In reaching our decision we specifically and separately analyzed both whether the claims were based on the health care provider's allegedly departing from standards for health care, and whether they were also based on its allegedly departing from standards for safety. *Id.* at 180-86. Regarding the safety standards issue, we reviewed the definition of HCLC and determined that the phrase "directly related to health care" modified the terms immediately before it—professional or administrative services—but not the word safety. *Id.* at 185. We said that "Williams'[s] claims are indeed for departures from accepted standards of safety. We conclude that the safety component of HCLCs need not be directly related to the provision of health care and that Williams'[s] claims against West Oaks implicate this prong of HCLCs." *Id.* at 186. Because we also concluded that Williams's claims were HCLCs because they were for departures from health care standards, our decision that his claims were HCLCs rested

8

on alternative holdings that are both entitled to *stare decisis* treatment: the claims were for departures from health care standards and they were for departures from safety standards. *Id.*; *see State Farm Mut. Auto. Ins. Co. v. Lopez*, 156 S.W.3d 550, 554 (Tex. 2004) (distinguishing alternative holdings from dictum).

The purpose of the TMLA's expert report requirement is not to have claims dismissed regardless of their merits, but rather it is to identify and deter frivolous claims while not unduly restricting a claimant's rights. *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011). And the Legislature did not intend for the expert report requirement to apply to every claim for conduct that occurs in a health care context. *See Loaisiga v. Cerda*, 379 S.W.3d 248, 258 (Tex. 2012). For example, in *Loaisiga* patients claimed that a doctor improperly touched them during the course of medical exams and thereby assaulted them. 379 S.W.3d at 253. The trial court concluded that the claim was not an HCLC and the court of appeals affirmed. *Id.* at 254. We pointed out that the statutory definition of "health care" is broad ("any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement" TEX. CIV. PRAC. & REM. CODE § 74.001(10)), and that if the facts underlying a claim *could* support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, the claims were HCLCs regardless of whether the plaintiff alleged the defendants were liable for breach of the standards. *See Loaisiga*, 379 S.W.3d at 255. But that being so, we further explained:

9

> we fail to see how the Legislature could have intended the requirement of an expert report to apply under circumstances where the conduct of which a plaintiff complains is wholly and conclusively inconsistent with, and thus separable from, the rendition of "medical care, or health care, or safety or professional or administrative services directly related to health care" even though the conduct occurred in a health care context. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *see also* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . .").

*Id.* at 257. Our reasoning led to the conclusion that a patient's claim against a medical provider for assault during a medical examination is not an HCLC if the only possible relationship between the alleged improper conduct and the rendition of medical services or health care was the setting in which the conduct took place. *Id.*

In this case, the hospital advances two positions in support of the lower courts' rulings and its assertion that Ross's claim is an HCLC. First, it addresses slip and fall claims generally, and says that any slip and fall event within a hospital is directly related to health care because it necessarily is related to the safety of patients. Second, it focuses on Ross's claim specifically and argues that her claim is related to health care because she alleges the hospital breached standards applicable to maintaining a safe environment for patients. We disagree with both positions.

As to the hospital's first contention, even though the claims in *Loaisiga* were by a patient and the nature of the claims differ from Ross's safety standards-based claim, the principle we explicated there applies here. A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. *See Loaisiga*, 379 S.W.3d at 257.

10

As to its second contention, Ross alleged that the hospital failed to exercise reasonable care in making the floor safe. The standards Ross says the hospital breached regarding maintenance of its floor may be the same as the hospital's standards for maintaining a safe environment in patient care areas—but those may also be the same standards many businesses generally have for maintaining their floors. And the hospital does not claim, nor does the record show, that the area where Ross fell was a patient care area or an area where patients possibly would be in the course of the hospital's providing health care services to them. Nor does the hospital reference support in the record for the position that the area had to meet particular cleanliness or maintenance standards related to the provision of health care or patient safety. *See Ollie*, 342 S.W.3d at 527 ("[S]ervices a hospital provides its patients necessarily include those services required to meet patients' fundamental needs such as cleanliness . . . and safety."). Which leads to the question of whether Ross's claims are nevertheless HCLCs, as the hospital would have us hold.

The TMLA does not specifically state that a safety standards-based claim falls within its provisions only if the claim has some relationship to the provision of health care other than the location of the occurrence, the status of the defendant, or both. But the Legislature must have intended such a relationship to be necessary, given the legislative intent explicitly set out in the TMLA and the context in which "safety" is used in the statute. We said as much in *Loaisiga*. 379 S.W.3d at 257. Even though the statute's phrase "directly related to health care" does not modify its reference to safety standards, that reference occurs within a specific context, which defines an HCLC to be "a cause of action against a health care provider or physician for [a] treatment, [b] lack of treatment, [c] or other claimed departure from accepted standards of medical care, or health care,

11

or safety." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). Where the more specific items, [a] and [b], are followed by a catchall "other," [c], the doctrine of *ejusdem generis* teaches that the latter must be limited to things like the former.[1] And here, the catchall "other" itself refers to standards of "medical care" or "health care" or "safety." Considering the purpose of the statute, the context of the language at issue, and the rule of *ejusdem generis*, we conclude that the safety standards referred to in the definition are those that have a substantive relationship with the providing of medical or health care. And if it were not so, the broad meaning of "safety" would afford defendant health care providers a special procedural advantage in the guise of requiring plaintiffs to file expert reports in their suits regardless of whether their cause of action implicated the provision of medical or health care. We do not believe the Legislature intended the statute to have such arbitrary results. *See* TEX. GOV'T CODE § 311.021 ("In enacting a statute, it is presumed that . . . a just and reasonable result is intended . . . ."); *Synatzske*, 438 S.W.3d at 54 (declining to attribute to the Legislature an intent to require a meaningless, arbitrary procedural hurdle for injured persons to bring suit).

Thus, we conclude that for a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care. And that nexus must be more than a "but for" relationship. That is, the fact that Ross, a visitor and not a patient, would not have been injured but for her falling inside the hospital is not a sufficient

---

[1] *Hilco Elec. Co-op. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) ("[T]he rule of *ejusdem generis* . . . provides that when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation."); *see also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 199 (2012) ("Where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned.").

12

relationship between the standards Ross alleges the hospital violated and the hospital's health care activities for the claim to be an HCLC. As we recognized in *Loaisiga*, "[i]n some instances the only possible relationship between the conduct underlying a claim and the rendition of medical services or healthcare will be the healthcare setting (*i.e.*, the physical location of the conduct in a health care facility), the defendant's status as a doctor or health care provider, or both." 379 S.W.3d at 256. But although the mere location of an injury in a health care facility or in a health care setting does not bring a claim based on that injury within the TMLA so that it is an HCLC, the fact that the incident could have occurred outside such a facility or setting does not preclude the claim from being an HCLC. The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety.

As this case demonstrates, the line between a safety standards-based claim that is not an HCLC and one that is an HCLC may not always be clear. But certain non-exclusive considerations lend themselves to analyzing whether such a claim is substantively related to the defendant's providing of medical or health care and is therefore an HCLC:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;
2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;
3. At the time of the injury was the claimant in the process of seeking or receiving health care;
4. At the time of the injury was the claimant providing or assisting in providing health care;

13

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

Measuring Ross's claim by the foregoing considerations, it is clear that the answer to each is "no." The record does not show that the cleaning and buffing of the floor near the exit doors was for the purpose of protecting patients. Nor does the record reflect that the area where Ross fell was one where patients might be during their treatment so that the hospital's obligation to protect patients was implicated by the condition of the floor at that location. Ross was not seeking or receiving health care, nor was she a health care provider or assisting in providing health care at the time she fell. There is no evidence the negligence alleged by Ross was based on safety standards arising from professional duties owed by the hospital as a health care provider. There is also no evidence that the equipment or materials used to clean and buff the floor were particularly suited to providing for the safety of patients, nor does the record demonstrate that the cleaning and buffing of the floor near the exit doors was to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority.

## V. Conclusion

Under this record Ross's claim is based on safety standards that have no substantive relationship to the hospital's providing of health care, so it is not an HCLC. Because her claim is not an HCLC, she was not required to serve an expert report to avoid dismissal of her suit. We

14

reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** May 1, 2015