**Affirmed and Opinion filed May 28, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00479-CV

### BRAZOS PRESBYTERIAN HOMES, INC. D/B/A BAYOU MANOR HEALTH-CARE CENTER D/B/A BAYOU MANOR, Appellant

### V.

### VANESSA RODRIGUEZ, Appellee

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2013-38394**

## O P I N I O N

A custodian employed by a cleaning company was injured when an elevator malfunctioned in a nursing home facility where she was working. The custodian sued the nursing home facility for negligence on a premises liability theory. The nursing home facility moved to dismiss the custodian's suit, arguing that it involved a health care liability claim governed by the Texas Medical Liability Act and that no expert report had been filed as required. The trial court denied the

motion. Guided by the Supreme Court of Texas's recent decision in *Ross v. St. Luke's Episcopal Hospital*, No. 13-0439, 2015 WL 2009744 (Tex. May 1, 2015), we affirm.

## BACKGROUND

Appellant Brazos Presbyterian Homes, Inc. d/b/a Bayou Manor Health-Care Center d/b/a Bayou Manor ("Bayou Manor") is a nursing home facility in Harris County. Appellee Vanessa Rodriguez was an employee of Sodexo, a cleaning and custodial company that is not a party to this suit. Rodriguez alleges that she was working for Sodexo as a custodian at Bayou Manor when she stepped into an elevator on Bayou Manor's premises. While Rodriguez was in the elevator in furtherance of her job duties with Sodexo, the elevator dropped suddenly and without warning from the third floor to the first floor, causing her serious bodily injuries.

In June 2013, Rodriguez brought suit against Swettcorp d/b/a/ Elevator Technical Services and Elevator Transportation Services, Inc., both of whom she alleged were "common carriers who serviced, inspected, repaired and/or maintained the elevator at issue." Several months later, Rodriguez amended her petition to add Brazos Manor. Rodriguez alleged that she was an invitee at the time of her injury and that Brazos Manor owed her a duty of care to protect her from dangerous conditions that were known or that were reasonably discoverable. Rodriguez claimed that Brazos Manor was negligent in: (1) failing to inspect, maintain, or service the elevator; (2) failing to properly supervise employees, agents, or representatives in reference to the elevator; (3) failing to implement and/or follow proper elevator maintenance and repair policies and procedures; (4) providing an elevator in an unreasonably dangerous condition; and (5) failing to remedy and/or warn of the defects which caused the elevator to malfunction.

2

Rodriguez also alleged that Brazos Manor failed to properly inspect its elevators and invoked the doctrine of *res ipsa loquitur*.

Brazos Manor answered and filed a motion to dismiss. In the motion to dismiss, Brazos Manor asserted that it was a health care institution, Rodriguez had alleged a health care liability claim, and Rodriguez had failed to produce an expert report as required under the Texas Medical Liability Act. *See generally* Tex. Civ. Prac. & Rem. Code §§ 74.001–.507 (the TMLA). After an oral hearing, the trial court signed an order denying Brazos Manor's motion to dismiss on June 2, 2014. This interlocutory appeal followed.

## ANALYSIS OF BRAZOS MANOR'S ISSUES

Brazos Manor contends that the trial court erred by denying its motion to dismiss because Rodriguez's claim, at its core, is based on an allegation that Brazos Manor, a health care provider, failed to ensure her safety on its premises, and this allegation is sufficient to trigger the TMLA. Because Rodriguez failed to provide a compliant expert report as required under section 74.351(a) of the TMLA, Brazos Manor argues that dismissal of her suit was mandatory. In response, Rodriguez contends that her claims are completely unrelated to the provision of health care, and the mere fact that they arose on a health care provider's premises is insufficient to trigger the TMLA.

### Standard of Review

The TMLA defines a "health care liability claim" as:

> *a cause of action against a health care provider* or *physician for treatment, lack of treatment, or other claimed departure from accepted standards of* medical care, or health care, or *safety* or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

3

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13) (emphasis added). At the time Rodriguez filed suit, the TMLA provided that if a claim fell within this definition, "a claimant shall, not later than the 120th day after the original petition was filed, serve on each party or the party's attorney one or more expert reports . . . ." Act of May 18, 2005, 79th Leg., R.S. ch. 635, 2005 Tex. Gen. Laws 1590 (amended 2013) (current version at Tex. Civ. Prac. & Rem. Code § 74.351(a)).[1] If an expert report has not been served within the 120-day deadline and the "affected physician or health care provider" files a motion to dismiss, the trial court must "dismiss[] the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim" and award the physician or health care provider reasonable attorney's fees and costs of court. *Id.* § 74.351(b). It is undisputed that Brazos Manor is a health care institution as defined in the TMLA. *See id.* § 74.001(a)(11); *see also id.* § 74.001(a)(12)(A)(vii) (definition of "health care provider" includes "a health care institution").

Appellate courts generally review a trial court's ruling on a motion to dismiss under section 74.351 for an abuse of discretion. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011). However, to the extent that our review involves a matter of statutory construction, the issue is a legal question we review de novo. *See Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). Therefore, in determining whether Rodriguez's claim is an HCLC governed by the TMLA, we apply a de novo standard of review. *Id.*

### *Ross* Determines the Disposition of this Case

While this appeal was pending, the Supreme Court of Texas resolved a split

---

[1] For lawsuits commenced on or after September 1, 2013, the TMLA provides that the operative date is "the 120th day after the date each defendant's original answer is filed." *See* Tex. Civ. Prac. & Rem. Code § 74.351(a).

among the courts of appeals concerning whether and to what extent claimed departures from accepted standards of safety by a health care provider must be related to health care to constitute an HCLC governed by the TMLA. *See Ross*, 2015 WL 2009744, at *2 (concluding that court had jurisdiction to resolve inconsistent decisions of the courts of appeals to resolve uncertainty in the law regarding whether a safety standards-based claim must be related to health care). Accordingly, we are guided by the *Ross* court's interpretation of the scope of the TMLA and its instructions for analyzing whether a plaintiff's claim constitutes an HCLC.

In *Ross*, a visitor to a hospital sued the hospital on a premises liability theory after she slipped and fell near the lobby exit doors. *Id.* at *1. The hospital moved to dismiss Ross's claim, asserting that it was an HCLC and Ross had not filed as expert report. *Id.* The trial court granted the hospital's motion, and this court affirmed, concluding that it was not necessary for any connection to exist between health care and the safety standard on which a claim is based in order for the claim to come within the TMLA. *Id.*

On review, the Supreme Court of Texas reversed this court's judgment, holding that for a safety-based claim against a health care provider to be an HCLC "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* at *6. The court explained that "[t]he pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* Acknowledging that "the line between a safety standards-based claim that is not an HCLC and one that is an HCLC may not always be clear," the court articulated seven non-exclusive considerations to aid in analyzing whether a safety standards-based claim is substantively related to

5

the defendant's providing of medical or health care and is therefore an HCLC:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*.

Brazos Manor's brief primarily relies on this court's prior precedent, but it also argues that the definition of "health care" in the TMLA "takes on an expanded meaning in the nursing home context" to include providing residents, staff, and guests a safe and properly functioning environment. *See Omaha Healthcare Center, LLC v. Johnson*, 344 S.W.3d 392, 394–95 (Tex. 2011) ("Part of the fundamental patient care required of a nursing home is to protect the health and safety of the residents.") (citing 40 Tex. Admin. Code § 19.1701); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 849 (Tex. 2005) (stating that nursing home services include "meeting the fundamental care needs of the residents"); *see also* Tex. Admin. Code § 19.309 ("The [nursing] facility must provide a safe,

6

functional, sanitary, and comfortable environment for residents, staff, and the public."); *Morrison v. Whispering Pines Lodge I, L.L.P.*, 428 S.W.3d 327, 334–35 (Tex. App.—Texarkana 2014, pet. pending) (holding that because nursing home was required by law to provide a safe, clean, and sanitary environment to its residents, housekeeper's claim based on slip and fall in an area recently mopped by another employee was "at least indirectly connected" to healthcare and thus an HCLC). Based on these authorities, Brazos Manor argues that Rodriguez's allegations amount to a claim that Brazos Manor failed to provide her a safe and properly functioning environment, and therefore her claims are HCLCs governed by the TMLA.

We understand Brazos Manor's argument to be that Rodriguez's claims are HCLCs because Brazos Manor, as a nursing home, is charged by law with the duty to provide a safe, functional environment for residents, staff, and the public. *See Ross*, 2015 WL 2009744, at *6. Accepting Brazos Manor's articulation of its duty to provide a safe environment generally, we find nothing in this record that shows how the nursing home's duty to maintain safe, functioning elevators on its premises is distinguishable from the duty owed by business owners generally. *See id.* at *5 ("A safety standards-based claim does not come within the TMLA's provisions just because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both.").

Brazos Manor does not claim that its duty to provide safe, functioning elevators was for the purpose of protecting patients; nor does Brazos Manor claim that the elevator was a patient care area, implicating Brazos Manor's obligation to protect persons who require special, medical care. *See id.* at *6. Even assuming the likelihood that nursing home patients may use the elevators during the course of their care at the nursing home, the record contains no support for Brazos Manor's

7

apparent position that elevator maintenance standards are substantively related to the provision of health care or patient safety. *See id*. at *5 (concluding that "safety standards referred to in the definition [of an HCLC] are those that have a substantive relationship with the providing of medical or health care"); *see also Diversicare*, 185 S.W.3d at 854 ("We do not distinguish Rubio's health care claims from premises liability claims 'simply because the landowner is a health care provider' but because the gravamen of Rubio's complaint is the alleged failure of Diversicare to implement adequate policies to care for, supervise, and protect its residents who require special, medical care.").

Additionally, at the time of Rodriguez's injury, she was neither a patient of the nursing home nor an employee involved in providing or assisting in providing health care to a patient. *See Ross*, 2015 WL 2009744, at *6. In contrast, the claims in both *Johnson* and *Diversicare* were based on injuries to patients and were held to be directly related to, or inseparable from, the provision of health care. *See Johnson*, 344 S.W.3d at 395 (holding that claims against a nursing home regarding a patient's death allegedly caused by a brown recluse spider bite were safety-based HCLCs); *Diversicare*, 185 S.W.3d at 855 (holding that nursing home resident's claims against nursing home based on alleged sexual abuse and sexual assault committed by another resident could be characterized as safety-based based HCLCs under predecessor statute).

Brazos Manor also relies on the *Morrison* case, in which a sister court held that a housekeeper's slip and fall claims against a nursing home were safety-based HCLCs because they were "at least indirectly" connected to healthcare. *See* 426 S.W.3d at 334–35 (noting that "the State of Texas requires [the nursing home] to provide housekeeping services and a safe, clean, and sanitary environment to its residents"). But the *Ross* court instructs that a "substantive nexus"—not merely an

8

indirect relationship—is required between the safety standards allegedly violated and the provision of health care. *See Ross*, 2015 WL 2009744, at *6. And, as the *Ross* court explained, "that nexus must be more than a 'but for' relationship." *Id.* In other words, the fact that Rodriguez, an employee of a third-party cleaning company, would not have been injured but for the nursing home's elevator malfunction, without more, is insufficient to show a substantive relationship between the standards she alleged the nursing home violated and its health care activities for the claim to be an HCLC. *Id.*

Finally, the record contains no evidence that the negligence Rodriguez alleged was based on safety standards arising from professional duties owed by Brazos Manor as a health care provider or that the elevator was of a specific type used in the provision of health care. Nor does Brazos Manor point to any evidence that the provision and maintenance of properly functioning elevators is required to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority. *See id.*

Weighing the *Ross* court's non-exclusive considerations, we conclude that the record in this case does not show a "substantive nexus" between Rodriguez's claims relating to the nursing home's maintenance of its elevator and Brazos Manor's provision of health care. *See id.* We affirm the trial court's judgment.


/s/     Ken Wise
Justice


Panel consists of Justices Christopher, Donovan, and Wise.


9