

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

June 20, 2016

Mr. Mike Morath
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. KP-0097

Re: The legal status of real property described by section 12.128 of the Education Code that is returned to the State from a charter school (RQ-0086-KP)

Dear Commissioner Morath:

Your predecessor asked "whether real property that is returned to the state pursuant to section 12.128 of the Education Code is 'unappropriated public domain' that must be returned to the School Land Board (SLB) as part of the Permanent School Fund (PSF) under section 43.001(a)(2) of the Texas Education Code[.]"[1]

As an initial matter, section 12.128 is expressly limited to "[p]roperty purchased or leased with funds received by a charter holder under Section 12.106" of the Education Code after September 1, 2001. TEX. EDUC. CODE § 12.128(a). Your predecessor did not tell us whether the property at issue was purchased or leased with state-provided funds after the specified date. *See generally* Request Letter at 1–3.[2] Moreover, the question whether any given interest in real property falls within the scope of section 12.128 would involve the resolution of fact questions, a task inapposite to the opinion process. *See* Tex. Att'y Gen. Op. No. KP-0046 (2015) at 4 (stating that this office does not answer fact questions). Thus, we limit this opinion to the legal issues presented by sections 12.128 and 43.001 of the Education Code and do not address issues regarding the ownership of any particular property.

Subsection 43.001(a)(2) of the Education Code provides that "the permanent school fund, which is a perpetual endowment for the public schools of this state, consists of . . . all of the unappropriated public domain remaining in this state, including all land recovered by the state by

---

[1]*See* Letter from Michael Williams, Comm'r of Educ., to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Dec. 21, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter"); Letter from Mike Morath, Comm'r of Educ., to Virginia K. Hoelscher, Chair, Op. Comm., Office of the Tex. Att'y Gen. at 1 (Jan. 8, 2016) (confirming the continued need for answers to the questions posed by predecessor) (on file with the Op. Comm.).

[2]*See also* Brief from Thomas Sage, on behalf of the Tex. Charter Sch. Ass'n, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–4 (Feb. 2, 2016) (arguing such property is private property of the charter school) (on file with the Op. Comm.).

suit or otherwise . . . ." Tex. Educ. Code § 43.001(a)(2); *see also* Tex. Const. art. VII, § 2 (providing that all "funds, lands and other property heretofore set apart and appropriated for the support of public schools . . . shall constitute a permanent school fund"). The term "unappropriated" is undefined in chapter 43 or elsewhere in Texas statutes. Courts "often look to dictionary definitions for the ordinary meaning" of a statute's undefined term. *See Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex. 2015). The common meaning of the term "unappropriated" is "not allocated, assigned, or taken into possession." New Oxford Am. Dictionary 1878 (3rd ed. 2010). Though no judicial opinion or attorney general opinion has defined "unappropriated" as used in subsection 43.001(a)(2), an opinion from this office, considering the predecessor to subsection 43.001(a)(2), said the statute was "evidence of a consistent State policy that lands not designated to a specific agency should be deemed to belong to the Permanent School Fund." Tex. Att'y Gen. Op. No. MW-18 (1979) at 2; *see also* Tex. Att'y Gen. Op. No. JM-347 (1985) at 2 (discussing various avenues by which the State may recover land). Given the term's ordinary meaning and its lack of express treatment elsewhere in Texas jurisprudence, a court would likely conclude that subsection 43.001(a)(2) refers to land not allocated, assigned, or taken into possession, or otherwise set aside, by the Legislature for another purpose.

Section 12.128 of the Education Code provides that:

> (a) Property purchased or leased with funds received by a charter holder under Section 12.106 after September 1, 2001:
>
> > (1) is considered to be public property for all purposes under state law;
> >
> > (2) is property of this state held in trust by the charter holder for the benefit of the students of the open-enrollment charter school; and
> >
> > (3) may be used only for a purpose for which a school district may use school district property.
>
> . . . .
>
> (c) The commissioner shall:
>
> > (1) take possession and assume control of the property described by Subsection (a) of an open-enrollment charter school that ceases to operate; and
> >
> > (2) supervise the disposition of the property in accordance with law.

Tex. Educ. Code § 12.128(a), (c). Subsection 12.128(c)'s plain language directs the Commissioner of Education ("Commissioner") to take possession and assume control of specified property of an open-enrollment charter school that has ceased to operate. *See id.* § 12.128(c); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015) ("In determining [legislative] intent

we look first and foremost to the language of the statute."). Subsection 12.128(c)(2) also expressly authorizes the Commissioner to "supervise the disposition" of the returned property. TEX. EDUC. CODE § 12.128(c)(2). In section 12.128, the Legislature expressly set aside this returned property as public property subject to the control and disposition of the Commissioner. *See id.* Accordingly, property returned to the State under section 12.128 is likely not unappropriated public domain for the Permanent School Fund under Education Code subsection 43.001(a)(2).[3]

Your predecessor asked five additional questions, four of which are premised on a conclusion that the property is part of the Permanent School Fund. *See* Request Letter at 3. Given our conclusion, we need not address these questions.

In his final question, your predecessor asked

> [i]f the real property . . . is appropriated to TEA under current law,
> does Chapter 31 of the Natural Resources Code, or any part thereof,
> govern the disposition of the property? If not, are Art. 3, sec. 51 of
> the Texas Constitution and Art. IX, § 8.02 of the Appropriations Act
> the only law governing disposition of the property?

*Id.* Chapter 31 of the Natural Resources Code governs the General Land Office ("GLO"). *See* TEX. NAT. RES. CODE §§ 31.001–.455. Subsection 31.051(2) requires the commissioner of the GLO to "execute and perform all acts and other things relating to public real property of the state . . . which is required by law." *Id.* § 31.051(2). The GLO is required to maintain an inventory of all real property owned by the State. *Id.* § 31.154; *see also id.* § 31.153(b) (requiring each State agency to maintain records of its real property and to furnish such records to the GLO's division of asset management). The GLO is also required to periodically review and report on State real property that is not being used or is being substantially underused. *Id.* §§ 31.156 (providing for review), .157, .1571 (providing for an evaluation report to the Governor and other officials). Chapter 31 provides a process through which the GLO may recommend and otherwise be involved in transactions involving property owned by the State in specific instances.[4] While chapter 31 does not authorize the GLO to unilaterally direct the disposition of public property that is returned to the State pursuant to section 12.128, the chapter certainly provides for the involvement of the GLO in the Commissioner's disposition of such property. Moreover, the Legislature evidenced an

---

[3]This conclusion is bolstered by the argument, proffered by the General Land Office, that a conclusion that any property returned to the State under section 12.128 of the Education Code is part of the Permanent School Fund would render section 12.128 superfluous or meaningless, a result courts avoid if at all possible. *See* Letter from Mark Havens, Gen. Counsel, Gen. Land Office, to Honorable Ken Paxton, Tex. Att'y Gen. at 3–4 (Jan. 22, 2016) (noting that chapter 51 of the Natural Resources Code gives the State Land Board exclusive authority to control and dispose of Permanent School Fund property) (on file with the Op. Comm.).

[4]*See, e.g.,* TEX. NAT. RES. CODE §§ 31.1573(a) (authorizing the GLO to "take charge and control of the real property as necessary to conduct and close a real estate transaction authorized by the governor"), 31.158(a) (authorizing the division of asset management to "take possession and control of the real property" and to negotiate and close a real estate transaction involving same "[i]f the legislature authorizes" the transaction); 31.067 (authorizing the asset management division to sell real property acquired on behalf of the State pursuant to section 402.025 of the Government Code).

intent that the GLO assist the Commissioner in the disposition of the property. *See* General Appropriations Act, 84th Leg., R.S., ch. 1281, art. IX, § 8.02(h)(2), 2015 Tex. Gen. Laws 4343, 5206 ("The General Land Office, upon request of the commissioner of education, may enter into an interagency agreement to assist with the marketing and sale of the state real property in an expedient manner and that allows the recovery of costs.").

The last question also inquires whether Texas Constitution article III, section 51 and article IX, section 8.02 of the Appropriations Act are the only other laws that may govern the disposition of the returned property. *See* Request Letter at 3. Under Texas Constitution article III, sections 51 and 52(a), the Commissioner is prohibited from making an outright grant of the public property. TEX. CONST. art. III, §§ 51, 52(a); *see* Tex. Att'y Gen. Op. No. JC-0146 (1999) at 2–3 (acknowledging that application of public funds to private interests is prohibited if gratuitous); *Tex. Mun. League Intergov'l Risk Pool v. Tex. Workers' Comp. Comm'n.*, 74 S.W.3d 377, 384 (Tex. 2002) (establishing three-part test to determine constitutionality of an expenditure of public funds or property). Article IX, subsection 8.02(h) of the Appropriations Act of the Eighty-fourth Legislature provides that

> [p]roceeds from the sale of real property returned to the state due to revocation or other cessation of operation of an entity under Chapter 12, Texas Education Code, are appropriated to the Texas Education Agency for the management and closure of entities and disposition of state property under Chapter 12, Texas Education Code.

General Appropriations Act, 84th Leg., R.S., ch. 1281, art. IX, § 8.02(h), 2015 Tex. Gen. Laws 4343, 5206. By its plain language, proceeds from the disposition of public property returned to the State pursuant to section 12.128, Education Code, are appropriated to the Texas Education Agency for the "management and closure of entities and disposition of state property." *Id.* As your predecessor acknowledged, Texas Constitution article III, section 51 and article IX, section 8.02 of the Appropriations Act apply to property returned to the State under section 12.128. *See* Request Letter at 3. While we do not find additional law that expressly provides for the disposition of property returned to the State pursuant to section 12.128, we cannot foreclose the possibility that other law may apply to the Commissioner's disposition of the property.

## S U M M A R Y

Subsection 12.128(c) of the Education Code provides that the Commissioner of Education shall take possession and assume control of, and supervise the disposition of, public property of an open-enrollment charter school that ceases to operate. In this provision, the Legislature has set aside this returned public property such that it is not unappropriated property for the Permanent School Fund under subsection 43.001(a)(2) of the Education Code.

Chapter 31 of the Natural Resources Code does not authorize the General Land Office ("GLO") to unilaterally direct the disposition of public property returned to the State pursuant to section 12.128, but it provides for GLO involvement in the Commissioner of Education's disposition of such property.

Texas Constitution article III, sections 51 and 52(a) prohibit the Commissioner of Education from gratuitously granting such property to private interests, and article IV, subsection 8.02(h) of the 2015 General Appropriations Act appropriates the proceeds from the disposition of such property. Aside from these provisions, we cannot foreclose the possibility that other law may apply to the Commissioner's disposition of the property.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee