**Affirmed and Memorandum Opinion filed February 27, 2020.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00868-CV

---

### HARRIS COUNTY HOSPITAL DISTRICT, Appellant

### V.

### NINA MCNEW, Appellee

---

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2017-55476**

---

## M E M O R A N D U M   O P I N I O N

In a single issue, appellant Harris County Hospital District ("the Hospital") contends the trial court erred by denying its motion to dismiss appellee Nina McNew's suit under the Texas Medical Liability Act ("TMLA"). For the reasons below, we affirm.

### BACKGROUND

McNew worked as a clerical employee for Westat, a company that performs

statistics-related research for the federal government. Describing her job's purpose as "solely to record statistical data," McNew said she would audit patients' emergency room charts and identify those patients with a history of drug abuse.

In 2006, McNew was based at the Lyndon B. Johnson Hospital in northeast Houston. McNew worked in a private administrative office that was inaccessible to patients. Alleging that her office was located adjacent to a "radiation-emitting device," McNew asserts that radiation exposure caused her to develop an aggressive form of breast cancer.

McNew sued the Hospital in August 2017 and asserted a claim for negligence. In June 2018, the Hospital filed a motion to dismiss McNew's claim under the TMLA and attached as evidence (1) McNew's original petition; (2) the Hospital's answer; and (3) the Hospital's x-ray registration, radioactive material license, and radiographic imaging operating and safety program. The Hospital supplemented its motion with McNew's deposition.

After an oral hearing, the trial court denied the Hospital's motion to dismiss.[1] The Hospital timely appealed.

## ANALYSIS

In a single issue, the Hospital challenges the trial court's denial of its motion to dismiss. Arguing that McNew's cause of action constitutes a health care liability claim under the TMLA, the Hospital asserts the claim should have been dismissed for McNew's failure to comply with the TMLA's expert-report requirement.

## I.    Standard of Review and Governing Law

A ruling on a motion to dismiss under the TMLA generally is reviewed for

---

[1] A transcript of the oral hearing was not included with the appellate record.

an abuse of discretion. *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). But we review *de novo* whether a particular claim constitutes a health care liability claim. *See, e.g., Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 757 (Tex. 2014); *Brazos Presbyterian Homes, Inc. v. Rodriguez*, 468 S.W.3d 175, 177 (Tex. App.—Houston [14th Dist.] 2015, no pet.). In doing so, we consider the entire record including the pleadings, motions and responses, and any evidence attached to the motions. *Ahmadi v. Moss*, 530 S.W.3d 754, 758 (Tex. App.—Houston [14th Dist.] 2017, no pet.). In determining the question, we examine the underlying nature and gravamen of the claim, rather than the way it is pleaded. *Garland Cmty. Hosp. v. Rose*, *156* S.W.3d 541, 543 (Tex. 2004). The burden is on the party seeking dismissal to prove the plaintiff's claim is a health care liability claim. *Houston Methodist Willowbrook Hosp. v. Ramirez*, 539 S.W.3d 495, 498 (Tex. App.—Houston [1st Dist.] 2017, no pet.). If a patient asserts a claim against a physician or health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement, then a rebuttable presumption arises that the patient's claim is a health care liability claim, and the plaintiff bears the burden of rebutting the presumption. *Rio Grande Valley Vein Clinic, P.A. v. Guerrero*, 431 S.W.3d 64, 65 (Tex. 2014) (per curiam).

Health care liability claims are subject to the TMLA's provisions, including its expert-report requirement. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.001(a)(13), 74.351(a) (Vernon 2017); *see also Lout v. The Methodist Hosp.*, 469 S.W.3d 615, 616-17 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Under the TMLA, a plaintiff asserting a health care liability claim must serve an expert report within 120 days of the filing of an answer by any defendant physician or health care provider. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). If the plaintiff fails to serve an expert report for claims made under this chapter, the trial

court must dismiss the plaintiff's claims on the defendant's motion. *Id.* § 74.351(b)(2).

The TMLA defines a health care liability claim as:

a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.001(a)(13). Arguing that McNew's negligence claim constitutes a health care liability claim, the Hospital asserts that in making the claim McNew "alleg[es] a departure from accepted standards of safety."

The TMLA does not define "safety" and the Supreme Court of Texas has construed the word according to its common meaning as "the condition of being 'untouched by danger; not exposed to danger; secure from danger, harm or loss.'" *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 855 (Tex. 2005) (quoting Black's Law Dictionary 1336 (6th ed. 1990)). A safety-standards claim need not be directly related to the provision of health care to qualify as a health care liability claim. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). However, for a safety-standards claim to be a health care liability claim, "there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Id.* That nexus must be more than a "but for" relationship. *Id.*

The *Ross* court stated that "[t]he pivotal issue in a safety[-]standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505. A safety-standards claim does not necessarily fall

4

within the TMLA's provisions merely because the underlying occurrence took place in a health care facility, the claim is against a health care provider, or both. *Id*. at 503.

The supreme court in *Ross* promulgated seven non-exclusive considerations to employ when analyzing whether a safety-standards claim is a health care liability claim:

1. Did the defendant's alleged negligence occur while the defendant was performing tasks with the purpose of protecting patients from harm?

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated?

3. At the time of the injury was the claimant in the process of seeking or receiving health care?

4. At the time of the injury was the claimant providing or assisting in providing health care?

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider?

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care?

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id*. at 505.

In *Ross*, the plaintiff sued the defendant hospital after she slipped and fell in the hospital's lobby as the floor was being cleaned and buffed. *Id*. at 499. Concluding the plaintiff did not assert a health care liability claim, the supreme court noted that (1) the plaintiff was not seeking, receiving, or providing health care when she fell; (2) the area where the plaintiff fell was not where patients would be during treatment; and (3) the record did not show the cleaning and

buffing of the floor were for the purpose of protecting patients. *Id*. at 505. The supreme court also emphasized that there was no evidence that (1) the alleged negligence "was based on safety standards arising from professional duties owed by the hospital as a health care provider," (2) "the equipment or materials used to clean and buff the floor were particularly suited to providing for the safety of patients," or (3) the cleaning and buffing were "to comply with a safety-related requirement set for health care providers by a governmental or accrediting authority." *Id*.; *see also KSADD, LLC v. Williams*, No. 05-15-00776-CV, 2016 WL 4385794, at *3 (Tex. App.—Dallas Aug. 17, 2016, no pet.) (mem. op.) (the plaintiff sued after she was knocked to the ground by malfunctioning automatic doors at surgery center's entrance; concluding the claim did not implicate the TMLA, the court reasoned that the "alleged negligence due to the doors malfunctioning was not based on safety standards arising from professional duties [the defendant] owed as a health care provider").

## II. Application

Here, to support her negligence claim, McNew asserts that the Hospital breached its duty by "placing [McNew] in an office that was immediately adjacent to a powerful x-ray machine that emitted powerful radiation."

Our analysis of this claim begins with the seven *Ross* factors discussed above. *See Ross*, 462 S.W.3d at 505. Three of these factors clearly weigh against the conclusion that McNew's claim implicates the TMLA:

- First, McNew's alleged injuries did not occur in a place where patients might be while receiving care; instead, she was in an administrative office that was not accessible to patients. *See id*.

- Second, at the time of the alleged injury, McNew was not seeking or receiving health care.

- Third, McNew was not providing or assisting in providing health care

6

at the time she allegedly was injured. Rather, as she stated in her deposition, she was performing statistics-related research for a government-funded research project and had "no employment relationship" with the Hospital. *See Kindred Healthcare, Inc. v. Morales*, 499 S.W.3d 475, 480 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (rejecting the defendant's "sweeping conception" that maintenance worker repairing drain was assisting in providing health care because "functioning drains are critical to hospital hygiene"); *Brazos Presbyterian Homes, Inc.*, 468 S.W.3d at 176, 179 (employee of third-party cleaning company was not providing or assisting in providing health care to patients).

One of the remaining *Ross* factors examines whether the instrumentality involved in the alleged negligence was "a type used in providing health care." *Ross*, 462 S.W.3d at 505. Based on the limited evidence and briefing addressing the instrumentality in question, the answer to this factor is indeterminate. It is unclear whether the instrumentality at issue was used for the provision of health care, for research, or for some other purpose.

Two *Ross* factors examine whether the alleged negligence (1) was based on safety standards arising from professional duties owed by the health care provider, or (2) occurred in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies. *Id.* Addressing these factors, the Hospital points to the following business records it filed in the trial court: (1) "Department of State Health Services Certificate of X-Ray Registration;" (2) "Department of State Health Services Radioactive Material License;" and (3) "Operating and Safety Program for Radiographic Imaging."

The Certificate of X-Ray Registration mandates that the Hospital comply with eight provisions in the Texas Administrative Code.[2] One of these provisions

---

[2] These provisions are entitled as follows: Texas Administrative Code §§ 289.203

7

specifically regulates "radiation machines in the healing arts," with "healing arts" defined as "[a]ny system, treatment, operation, diagnosis, prescription, or practice for the ascertainment, cure, relief, palliation, adjustment, or correction of any human disease, ailment, deformity, injury, or unhealthy or abnormal physical or mental condition." *See* Tex. Admin. Code Ann. § 289.227(a), (e)(41). Another provision regulates dental radiation machines. *See id.* § 289.232(a). The remaining six provisions apply generally to any person who receives, possesses, uses, owns, or acquires radiation-emitting machines. *See id.* §§ 289.203(a), .204, .205, .226(a)(2), .228(a), .231(b)(1).

Without more than a tentative identification regarding the type of machine that allegedly caused McNew's injuries, we cannot determine whether the machine was governed by requirements specific to health care providers or those generally applicable to any person possessing radiation-emitting machines. Likewise, we cannot determine whether the alleged breach implicates standards or requirements specific to health care providers. A claim alleging excessive radiation exposure is not *per se* based on safety standards arising from professional duties owed by a health care provider.

Finally, the last factor in our analysis examines whether the alleged negligence occurred while the defendant was performing tasks with the purpose of protecting patients from harm. *See Ross*, 462 S.W.3d at 505. As discussed above, the evidence does not identify the type of machine that allegedly caused McNew's

---

("Notices, Instructions, and Reports to Workers; Inspections"), .204 ("Fees for Certificates of Registration, Radioactive Materials Licenses, Emergency Planning and Implementation, and Other Regulatory Services"), .205 ("Hearing and Enforcement Procedures"), .226 ("Registration of Radiation Machine Use and Services"), .227 ("Use of Radiation Machines in the Healing Arts"), .228 ("Radiation Safety Requirements for Industrial Radiation Machines"), .231 ("General Provisions and Standards for Protection Against Machine Produced Radiation"), .232 ("Radiation Control Regulations for Dental Radiation Machines").

injuries or its manner of use at the time the injuries occurred. Without this evidence, we cannot determine which tasks the Hospital was performing or their purpose. Therefore, these *Ross* factors are indeterminate due to the absence of relevant evidence.

Because McNew did not assert a claim based on facts implicating the Hospital's conduct during any care, treatment, or confinement of McNew, no rebuttable presumption arose that McNew's claim is a health care liability claim, so the Hospital bore the burden of proving that McNew's claim is a health care liability claim. *See Houston Methodist Willowbrook Hosp.*, 539 S.W.3d at 498; *Rio Grande Valley Vein Clinic, P.A.*, 431 S.W.3d at 65. As our analyses of the *Ross* factors show, the Hospital did not carry this burden. Therefore, the trial court did not err by denying the Hospital's motion to dismiss.

## CONCLUSION

We overrule the Hospital's sole appellate issue and affirm the trial court's September 17, 2018 order denying the Hospital's motion to dismiss.


/s/     Meagan Hassan
Justice


Panel consists of Chief Justice Frost and Justices Wise and Hassan.