**FILED**

IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**7/7/15**

**CECILE FOY GSANGER, CLERK**
**BY DTello**

ACCEPTED
13-15-00171-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/7/2015 7:02:23 PM
CECILE FOY GSANGER
CLERK

**No. 13-15-00171-CV**

IN THE THIRTEENTH COURT OF APPEALS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/7/2015 7:02:23 PM
CECILE FOY GSANGER
Clerk

CORPUS CHRISTI, TEXAS

---

# P. PALIVELA RAJU, M.D.

*Appellant*

v.

# DIANE JACKSON

*Appellee*

---

## APPELLEE'S SURREPLY BRIEF FOR APPELLANT

---

On Appeal from Cause No. 14-E-0190
In the 23rd District Court of Matagorda County, Texas

---

Alexander Forrest
State Bar No. 24065241
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
aforrest@fko-law.com

Alan Kolodny
State Bar No. 24056882
FORREST & KOLODNY, L.L.P.
1011 Augusta Drive, Suite 111
Houston, Texas 77057-2035
(713) 532-4474
(713) 785-0597 - Facsimile
akolodny@fko-law.com

# IDENTITY OF PARTIES AND COUNSEL

In accordance with TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to this appeal:

| **Plaintiff / Appellee** | **Counsel for Plaintiff/Appellee** |
|---|---|
| Diane Jackson | Mr. Alexander Forrest<br>Mr. Alan Kolodny<br>FORREST & KOLODNY, L.L.P.<br>1011 Augusta Drive, Suite 111<br>Houston, Texas 77057-2035<br>(713) 532-4474 / (713) 785-0597 - Fax<br>aforrest@fko-law.com |

| **Defendant / Appellant** | **Counsel for Defendant / Appellant** |
|---|---|
| P. Palivela Raju, M.D. | Mr. Gary Sommer<br>Mr. James R. Boston, Jr.<br>Boston & Hughes, P.C.<br>8584 Katy Freeway, Suite 310<br>Houston, TX 77024<br>(713) 961-1122 / (713) 965-0883 – Fax<br>gsommer@bostonhughes.com |

## OTHER PARTIES

### Co-Defendant Diagnostic Health Care Services d/b/a Onsite Balance Solutions

| *Trial Counsel* | *Appellate Counsel* |
|---|---|
| Mr. Kevin O'Murphy<br>Law Office of Brian J. Judis<br>9500 Arboretum Boulevard, Suite 145<br>Austin, Texas 78759<br>(512) 502-6431<br>(866) 489-7657 – (fax)<br>Kevin.Murphy2@cna.com | Mr. David Lunningham<br>Ms. Helena Venturini<br>Watson, Caraway, Midkipp &<br>Lunningham, LLP<br>1600 Oil & Gas Building<br>309 W. 7th Street<br>Fort Worth, Texas 76102<br>(817) 870-1717 / (817) 338-4852 - fax<br>dluningham@watsoncarraway.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL………………………………………ii

TABLE OF CONTENTS……………………………………………………iii-iv

INDEX OF AUTHORITIES……………………………………………v-vi

SUMMARY OF THE SURREPLY ARGUMENT……………………...……1-2

SURREPLY ARGUMENT………………………………………………..3-11

    I.     Appellee Argument that Her Claim is Not a Healthcare Liability Claim Was Presented to the Trial Court and Was Preserved for Appellate Review

    II.    Appellee's Claims May be Healthcare Liability Claims

    III.    Appellee Never Asserted that *Res Ipsa Loquitur* Avoids the Requirements of Chapter 74.

    IV.    Appellee's Expert, Dr. Ravdel, is Qualified to Render an Opinion under Chapter 74 of the TMLA.

CONCLUSION…………………………………………………………..12

CETFIFICATE OF COMPLIANCE…………………………………………...13

CERTIFICATE OF SERVICE……………………………………………13

# INDEX OF AUTHORITIES

**Cases**

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873
(Tex.2001)…………………………………………………………………….3, 8

*Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782
(Tex. App. – Texarkana, Mar. 1, 2013, pet. denied)…………………………….1, 4

*Ross v. St. Luke's Episcopal Hosp.,* ___ S.W.3d ___, 58 Tex.Sup.Ct.J. 766, 2015
WL 2009744 (Tex. May 1, 2015)…………………………………….2, 3, 4, 5, 6, 12

**Statutes and Rules**
Tex. Civ. Prac. & Rem Code, Chapter 74…………1,2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12

References to Clerk's Original Record are shown as (CR _____)
References to Clerk's Supp. Record are shown as (CR 1st Supp.____)

**SUMMARY OF THE SURREPLY ARGUMENT**

Appellee has always recognized the possibility that Appellee's claim is a healthcare liability claim, which is why Appellee timely filed a chapter 74 expert report under the Texas Medical Liability Act (TMLA). Despite Appellant's assertion that there is no basis for finding that Appellee's claim is not a healthcare liability claim, there are facts underlying Plaintiff's case which should at least raise the possibility, especially in an area of the law as contentious as safety claims against healthcare providers. This is an area of the law where Texas appellate courts have historically issued conflicting, divided opinions. The locale of the injury, or the mere fact that the injury occurred subsequent to Appellee receiving a cohloic stimulation is not alone sufficient to trigger a chapter 74 claim under the TMLA. *Good Shepherd Medical Center-Linden, Inc. v. Twilley*, 422 S.W.3d 782, 788 (Tex. App. – Texarkana, Mar. 1, 2013, pet. denied). The facts support a finding that the chair at issue was not a necessary part of the medical procedure provided. It was merely incidental to the medical testing, since the equipment used to conduct the cohloic stimulation test was separate and independent from the chair at issue in this case. The use of the chair to support Appellee's weight was, therefore, incidental to Appellee's medical testing in the same manner that a floor is incidental to entering a doctor's office. Just as a floor is necessary to support a patient's weight when performing an X-ray, so too is a chair. This rationale and

1

reasoning here is similar to that applied by the Texas Supreme Court in *Ross v. St. Luke's Episcopal* Hospital, where the Court ruled that a plaintiff's slip and fall at a hospital while visiting a patient was not a health care liability claim under chapter 74 of the TMLA. See *Ross v. St. Luke's Episcopal Hosp.,* ___ S.W.3d ___, 58 Tex.Sup.Ct.J. 766, 2015 WL 2009744 (Tex. May 1, 2015). The Court held that it was not a healthcare liability claim for the following reason:

> [B]ecause the record does not demonstrate a relationship between the safety standards she alleged the hospital breached – standards for maintaining the floor injside the loby exit doors – and the provision of health care, other than the location of the occurrence and the hospital's status as a healthcare provider." *Id.*, at 1.

Therefore, the issue of whether Appellee's claims are health care liability claims is not as transparent as simple as Appellant asserts.

If this Court finds that Appellee's claims are health care liability claims, Appellee has nonetheless satisfied the statutory requirements under chapter 74 of the TMLA. While Appellee's expert was unable to opine exactly how and why the chair at issue failed to hold Appellee's weight, there was no information upon which any expert, ENT or not, could rely on in making such a determination. Furthermore, the purpose of the expert report is not to explain exactly how the injury occurred, but to merely (1) inform the defendant of the specific conduct plaintiff has called into question and (2) provide a basis for the trial court to conclude the claims have merit. *Am. Transitional Care Ctrs. Of Tex., Inc. v.*

2

*Palacios,* 46 S.W.3d 873, 878 (Tex. 2001). Appellee's medical expert report meets the "objective good faith" standard for satisfying the statutory elements of chapter 74 of the TMLA and accomplishing its purpose as set forth in *Palacios*. Tex. Civ. Prac. & Rem. Code 74.351(l).

## SURREPLY ARGUMENT

### I. Appellee's Argument that Her Claim is Not a Healthcare Liability Claim Was Presented to the Trial Court and Was Preserved for Appellate Review

Appellant is correct, and Appellee, does not deny, that Appellee' filed its petition as a healthcare liability claim. Nonetheless, Appellee believes under the de novo standard or review there is an issue of law favoring a finding that Appellee's case is not a healthcare liability case, with particular emphasis on the fact that no medical doctor was present in Appellee's physician room at the time of her injury, a time when her medical testing had ceased. As a result, the failure on the part of Appellant is not so much grounded in the practice of medicine as the failure to provide a safe premises and supervision for a non-physician third party contractor to administer a health care related test. As Appellant is well aware, the location of the occurrence and the physician's status as a healthcare provider alone is insufficient as a means of applying the Texas Medical Liability Act to an injury which happens to occur on the premises of a healthcare provider. See *Ross v. St. Luke's Episcopal Hosp.,* ___ S.W.3d ___, 58 Tex.Sup.Ct.J. 766, 2015 WL

3

2009744 (Tex. May 1, 2015). Furthermore, "[I]f every safety claim against a health care provider were considered a health care liability claim, there would be no need to analyse the nature of the acts or omissions which caused the alleged injuries." *Twilley,* 422 S.W.3d at 788. Therefore, the question of whether Appellee's claim is a Healthcare Liability Claim is a legitimate issue to bring before this court. This issue was preserved in Appellee's Response to Appellant's objections to Appellee's expert report (CR Supp. 18). In fact, at the hearing on Appellant's objections to Appellee's chapter 74 expert report, Appellee states that this case is not a healthcare liability claim as follows:

> Your Honor, this is a case about a Plaintiff, Ms. Jackson, going to her doctor for head and neck problems and leaving the premises with a knee injury and shoulder injury. It is atypical of medical malpractice claims in the sense that the injuries with which she left the office were not related to the treatment for which she entered the office. (CR Supp. 34).

Furthermore, the Judge's order denying Appellant's objections to Appellee's expert report does not explicitly deny the objections under chapter 74 of the HCLA (CR Supp. 21).

In *Ross v. St. Luke's Episcopal Hospital,* the Texas Supreme Court recently provided a seven part analysis for determining whether a claimant's injuries at a hospital or the office of a healthcare provider necessarily implicates the TMLA. The factors are as follows:

4

(1) Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

(2) Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

(3) At the time of the injury was the claimant in the process of seeking or receiving health care;

(4) At the time of the injury was the claimant providing or assisting in providing healthcare;

(5) Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

(6) Is an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

(7) Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with the safety-related requirements set for health care providers by governmental or accrediting agencies? *Ross,* ___ S.W.3d ___, 58 Tex.Sup.Ct.J. 766, 2015 WL 2009744 (Tex. May 1, 2015).

The record does not clearly show that the chair at issue in this case was for use by patients, or for use in medical testing. Appellee has not had an opportunity to inspect the chair, nor has Appellant provided any basis for Appellee to conclude that the chair is necessarily implicated in vertigo testing. For example, what exactly about the chair makes it a necessary and appurtenant part of vertigo testing? A chair does not merely become a vertigo chair because someone chooses to give it that name. For all Appellee knows, the chair may be no different that the

5

chairs patients sit in when waiting in the lobby for their appointment. The chair may not have even been proper for the testing for which it was used on the date when Appellee was injured by it. With Appellant not in the room at the time the medical procedure was being performed, Appellee has no way of knowing whether Appellant had any authority in determining whether this particular chair would even be used to perform medical testing on Appellee. Appellee doesn't know whether the chair at issue in this case was the type routinely used to treat patients for vertigo, or whether Appellant used the chair for that purpose. Furthermore, without the right to conduct discovery and inspect the chair, Appellee has no evidence upon which to determine whether the chair was particularly suited to providing for the safety of patients beyond that of any other chair used to support the weight of patients, whether on the premises for medical treatment or not. Also, the record does not demonstrate that the use of this chair was to comply with a safety-related requirement set forth by a governmental or accrediting authority. Simply put, for all Appellee knows, this chair is not the type of chair used in providing healthcare, and without Appellant directing her to sit in the chair, or present to perform the test, there is no reason to believe the chair was a necessary component of the medical testing. In the same way as the slippery floor at St. Luke's Episcopal Hospital in *Ross* was merely incidental to a patient walking into and out of a hospital for treatment, so too is a chair in a doctor's office. *Id.*

6

Without a chair to hold a patient's weight, medical testing cannot be performed in the same manner that a patient cannot be treated unless it has a floor on which to enter the medical premises. The fact that a chair, like a floor, is incidental to the later performance of more specialized procedures, like a "cohloic stimulation" test, does not make it an integral element of treatment such that it becomes "equipment or materials…particularly suited to providing for the safety of patients." *Id*.

## II. Appellee's Claims May be Healthcare Liability Claims

For the reasons provided in Appellee's Second Amended brief, Appellee's claim may be healthcare liability claims, which is why Appellee timely filed a chapter 74 expert report. However, for the reasons cited above, Appellee believes that her claims are not healthcare liability claims.

## III. Appellee Never Asserted that *Res Ipsa Loquitur* Avoids the Requirements of Chapter 74

Appellee never asserted that pleading *res ipsa loquitur* is a way to eliminate the procedural requirement for a sufficient expert report. For the reasons cited in Appellee's brief, Appellant's Expert Report satisfies the statutory requirements of chapter 74. Dr. Ravdel's expert report provides that Appellant's standard of care under the facts of this case are two-fold: (1) to ensure that the medical office equipment is properly maintained and in working order, and (2) to ensure that balance testing is supervised by Appellant or some other qualified medical or

7

nursing staff. Appellee's argument is precisely that the facts of this case are so simple and plain that any layman can look at the facts of this case and conclude, as does Dr. Ravdel, that a chair should not collapse merely because a person is seated in it. The fact that Appellant is asking this court to require an expert to explain the exact procedures required to ensure that a basic chair does not collapse without any right to discovery or right to inspect the medical chair, amounts to holding Appellee to the standard of proof only imposed on Plaintiffs at summary judgment proceedings, a standard that has been deemed improper by the Texas Supreme Court as a test for determining the sufficiency of a chapter 74 expert report under the TMLA. In *Am. Transitional Care Ctrs. Of Tex., Inc. v. Palacios,* the court stated as follows:

> To avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary judgment proceeding or at trial." 46 S.W.3d 873, 875. (CR Supp. 17).

Appellant's entire brief and response to Appellee's brief amounts to improperly asking this Court to require that Appellee litigate the merits of its case at the earliest stage of the litigation, before Appellee has had a chance to engage in discovery and inspect a chair which injured Appellee. The questions that Appellant looks to our expert to answer cannot be answered by any expert without litigating the merits of the case.

## IV. Appellee's Expert, Dr. Ravdel, is Qualified to Render an Opinion under Chapter 74 of the TMLA.

A brief analysis of the facts of the lower court quickly reveals that the relevant subject area for any expert attempting to qualify under chapter 74 of the Texas Medical Liability Act (TMLA) is not any specific area of medical practice, but the general standard of care any medical physician owes his patients as a premises owner. As the owner of a medical practice, a physician owner must ensure that his medical premises are sufficiently maintained and in working order such that a chair does not collapse when a patient is merely seated in it. Given the limited discovery rights of Appellee prior to Judge Hardin's ruling on Appellant's Motion to Dismiss Pursuant to the TMLA, coupled with a factual backdrop where Appellee was injured after merely being seated in a chair that could not hold her weight, the "objective good faith effort" standard for determining whether an expert report is statutorily compliant has clearly been met. Tex. Civ. Prac. & Rem. Code 74.351(l). Appellant conveniently neglects to explain or even address how an "objective good faith effort" has not been met by Appellant, choosing to lace his arguments with grand conclusions without first assessing the threshold question of whether Appellee has made an "objective good faith effort." *Id.* Simply put, without a right to inspect the medical chair at issue in this case, and relying on the medical records alone, there is absolutely nothing any expert, orthopedic or not, could use to form an opinion that effectively states exactly what about the chair at

issue in this case is defective. The Court should, therefore, find that Appellee submitted a medical expert report in compliance with Tex. Civ. Prac. & Rem. Code 74.351(b).

V.     Appellee's Expert Report Satisfies the Chapter 74 Standard of Care Requirement

Dr. Ravdel's expert report provides that Appellant's standard of care under the facts of this case are two-fold: (1) to ensure that the medical office equipment is properly maintained and in working order, and (2) to ensure that balance testing is supervised by Appellant or some other qualified medical or nursing staff. (CR 33)

Appellee's expert report provided by Dr. Ravdel meets the "objective good faith effort" test for satisfying the Section 74.351(b) statutory requirement for sufficiency of an expert report based on the limited discovery rights available to Appellee and given the factual backdrop where Appellee was injured by a medical chair that did not hold her weight.

Appellant's response to Appellee's brief completely ignores the "objective good faith effort" test provided by the TMLA on whether an expert report sufficiently satisfies the statutory requirements. Section 74.351(l) of the Tex. Civ. Prac. & Rem. Code provides:

> A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent

10

an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

Whether an "objective good faith effort" has been made by Appellee depends on what information Appellee's medical expert relied on in reaching an opinion. Plaintiff's expert gives a fair summary of the standard of care given what is known about Plaintiff's injury and the simplistic facts and circumstances leading to Plaintiff's injury. The facts of each individual case control the detail required in the expert report, as the standard is whether the plaintiff has made an "objective good faith effort" to meet the statutory requirement. See Tex. Civ. Prac. & Rem. Code §74.351(l). This analysis necessarily varies depending on the facts of each particular case. The qualifications of the medical staff supervising Plaintiff and the maintenance history of the chair are not known at this time. Nothing is known about the design or condition of the chair except for facts and inferences drawn from medical records. Given Appellee's limited discovery rights at this early stage in the litigation, Appellee has limited tools available to acquire greater information. Therefore, Appellee has used its best efforts and acted in good faith under these facts to comply with the statutory requirements of the Texas Medical Liability Act.

## CONCLUSION

The Texas Supreme Court requires an analysis into the gravamen of the claim in order to determine if the claim is a health care liability claim subject to the

11

Texas Medical Liability Act, Chapter 74 of the Texas Civil Practice and Remedies Code. In this case, the gravamen of the claim is the proper maintenance and repair of a chair. The simple fact that an injury occurred on a health care providers premises is not enough to make it subject to the Texas Medical Liability Act. Appellee maintains that her claim is not a health care liability claim and therefore not subject to the chapter 74 expert report requirement. However, Appellee also acknowledges the fact that under the new Texas Supreme Court's seven factor test in *Ross*, the possibility remains that Appellee's case may be a healthcare liability claim under chapter 74. For that reason, Appellee timely filed a proper expert report that meets the statutory requirements set forth by chapter 74 of the TMLA for the reasons provided herein.

Respectfully Submitted,

/s/ Alexander Forrest

_____
Alexander Forrest
SBOT: 24065241
Forrest & Kolodny, LLP
1011 Augusta Dr., Ste. 111
Houston, TX 77057
Tel: (713) 598-0339
Fax: (713) 785-0597

# CERTIFICATE OF COMPLIANCE

I certify that this Appellee's Surreply Brief was prepared with Microsoft Word 2010, and that, according to that program's word-count function, the sections covered by Texas Rule of Appellate Procedure 9.4(i)(1) contain 3,527 words.

/s/ Alexander Forrest

_____

ALEXANDER FORREST

# CERTIFICATE OF SERVICE

In accordance with Rule 9.5(e) of the Texas Rules of Appellate Procedure, I certify that a copy of Appellant's 2nd Amended Brief was served on Plaintiff's counsel by electronic service through e-filing on this July 7, 2015.

Garry Sommer
James R. Boston, Jr.
Boston & Hughes, P.C.
8584 Katy Freeway, Suite 310
Houston, Texas 77057
Telephone: (713) 961-1122
gsommer@bostonhughes.com
jboston@bostonhughes.com

/s/ Alexander Forrest

_____

ALEXANDER FORREST