

# NUMBER 13-24-00172-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NEXION HEALTH AT KINGSVILLE, INC.
D/B/A LONE STAR RANCH HEALTHCARE
AND REHABILITATION CENTER; NEXION
HEALTH, INC.; NEXION HEALTH OF OHI, INC.;
NEXION HEALTH LEASING, INC.,                                    Appellants,

v.

ESTHER GARZA, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE
OF SILVINA GARZA,                                              Appellee.

## ON APPEAL FROM THE 105TH DISTRICT COURT
## OF KLEBERG COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Fonseca**
**Memorandum Opinion by Justice Fonseca**

This is an interlocutory appeal of the trial court's denial of a motion to dismiss a

health care liability suit. Appellants Nexion Health at Kingsville, Inc. d/b/a Lone Star Ranch Healthcare and Rehabilitation Center; Nexion Health, Inc.; Nexion Health of OHI, Inc.; and Nexion Health Leasing, Inc. (collectively Nexion) argue that the trial court erred because appellee Esther Garza, individually and on behalf of the Estate of Silvina Garza, failed to serve the curriculum vitae (CV) of her expert as required by the Texas Medical Liability Act (TMLA). We affirm.

## I.    BACKGROUND

Garza filed suit on June 21, 2023, alleging that her mother Silvina Garza suffered "pressure ulcers, fractures, malnutrition, and ultimately death" while a resident at Nexion's facility in Kingsville. Garza alleged that her mother's injuries and death were proximately caused by the negligence of Nexion's staff members. Along with her petition, Garza served an expert report by Marty Lee Schmidt, M.D., a physician based in Alabama. Schmidt's report began with a section entitled "Qualifications" which stated in part as follows:

> Please see my attached CV. I have over 33 years of medical experience as a physician. I am currently a private practice physician licensed in the states of Alabama, Texas, New Mexico, and Missouri. I devote at least 95% of my professional time to the active clinical practice of medicine. I devote at least 70% of my primary care practice to the care and treatment of adult and geriatric patients. I have experience in the care and treatment of patients and residents of skilled nursing facilities, private residence and assisted living facilities whom I see at my clinic on an outpatient basis. At the time of the occurrence of the injuries complained of, I worked fulltime as a physician. As a physician in private practice, I am very familiar and have had occasion to treat a large number of patients who have medical history similar to that of Ms. Silvina Garza. Specifically, I have treated patients who have a medical history that included a history of generalized muscle weakness, hypertension and Alzheimer's Disease. These chronic medical conditions place the elderly at increased risk for falls and I am cognizant of this and the treatment, including the prescription of assistive devices and assistance with activities of daily living needed by these patients. I am familiar with the treatment of the injuries complained of in this case, namely

falls with fracture injuries as I have treated and provided after care for patients who have suffered those injuries. On average, each year, I treat at least 50 limb fractures of varying degrees of severity. I also have written orders for prevention of falls in elderly persons who are at risk for falls. I have knowledge of the standards of care related to the preventions and treatment of falls such as those complained of in the care of Ms. Garza. I have experience in prevention or mitigation of falls and skin breakdown in adults whose medical history makes them a high pressure injury risk. A copy of my [CV] is attached as Exhibit A.

. . . .

In the regular course of my medical practice, I have had occasion to diagnose and treat residents with conditions similar to or identical to Ms. Garza who have experienced the development of skin breakdown, and falls, while under the care of skilled nursing facilities. I have extensive knowledge and experience in the injuries complained of and that were suffered by Ms. Garza. I also am familiar with the standards for skilled nursing facilities, as well as nursing staff who are employed by skilled nursing facilities in the provision of care to residents such as Ms. Garza. I have written orders for prevention of falls and for wound prevention. I have supervised the execution of these orders by RNs, LVNs and CNA[]s who were assigned to provide the hands-on care to residents. These orders included orders for the prevention and treatment of pressure injuries. I am familiar with the duties and interventions used in the prevention of pressure wounds. I am familiar with the standards of care for the skilled nursing facility involved in this claim as well as the standards of care as they pertain to RNs, LVNs and CNAs who were providing care to Ms. Garza.

Schmidt proceeded to explain in his report how he believed Nexion's acts and omissions breached the applicable standards of care and proximately caused Silvina's injuries and death. However, a copy of Schmidt's CV was not attached to his report and was not served on Nexion.

Nexion answered the suit on August 4, 2023. On January 5, 2024, Nexion filed a motion to dismiss on grounds that Garza "served no [CV]" as required by the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). Garza filed a response, and Nexion filed a reply to the response. After a hearing on January 25, 2024, the trial court denied the motion to dismiss, and this interlocutory appeal followed. *See id.* § 51.014(a)(9)

3

(authorizing appeal of interlocutory order denying motion to dismiss under the TMLA).

## II.    DISCUSSION

Nexion argues by three issues that: (1) pursuant to the TMLA, Garza was required to serve an expert report and CV within 120 days of Nexion's answer; (2) Garza failed to timely file a "statutorily sufficient [CV]" for Schmidt; and (3) Garza's suit should therefore be dismissed with prejudice and Nexion should be awarded attorney's fees. We consider the issues together.

### A.    Applicable Law and Standard of Review

Under the TMLA, a party asserting a "health care liability claim" must serve each defendant with "one or more expert reports, with a [CV] of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." *Id.* § 74.351(a). An "expert report" is defined as:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id.* § 74.351(r)(6). "The purpose of the expert report requirement is to deter frivolous claims, not to dispose of claims regardless of their merits." *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011).

Generally, if a plaintiff fails to serve a compliant expert report within 120 days of the defendant's answer, the trial court must dismiss the claim with prejudice and award reasonable attorney's fees on the defendant's motion. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b). However, a defendant waives any "objection to the sufficiency of the report" if such objection is made "later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed." *Id.* § 74.351(a).

4

Further, "[i]f an expert report has not been served within the [120-day period] because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency." *Id.* § 74.351(c).

We review a trial court's ruling on a motion to dismiss under the TMLA for abuse of discretion. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). But "[a] trial court has no 'discretion' in determining what the law is or applying the law to the facts." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Moreover, "[s]tatutory construction is a question of law we review de novo." *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 700 (Tex. 2015) (orig. proceeding).

## B.    Analysis

It is undisputed that Garza's claims are "health care liability claims" and that her suit is therefore subject to the TMLA's requirements. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (defining "health care liability claim"). It is also undisputed that, although Garza timely served Schmidt's report on Nexion, she did not serve a separate CV along with that report. Nexion argued in its motion to dismiss that § 74.351(b) requires dismissal of Garza's suit for that reason.[1]

---

[1] We note that, although the applicable version of the TMLA requires dismissal when a plaintiff fails to timely serve "an expert report," it does not explicitly provide for dismissal when a plaintiff fails to timely serve a *CV*. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b) (requiring dismissal if "an expert report has not been served within the period specified by Subsection (a)"); *id.* § 74.351(r)(6) (defining "expert report" without including information typically found in a CV). Citing *Palacios*, Nexion argues that "an expert report without a [CV]" requires dismissal under § 74.351(b). *See Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001) ("If the plaintiff fails within the time allowed either to provide the expert reports and [CV], or to nonsuit the case, the trial court must sanction the plaintiff by dismissing the

In response, Garza argued that the information provided in the "Qualifications" section of Schmidt's report satisfied the CV requirement. She further argued that, to the extent Nexion objected to the sufficiency of Schmidt's report, those objections were untimely and waived because they were not made within twenty-one days of Nexion's answer. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a). On appeal, Garza additionally contends that Nexion waived its request for dismissal due to its participation in discovery. *See id.* § 74.351(s) (providing that discovery is suspended "[u]ntil a claimant has served the expert report and [CV] as required by" § 74.351(a)); *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (defining waiver as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right").

Nexion does not dispute that the CV requirement may be satisfied with information contained in the expert report itself. *See Johnson v. Willens*, 286 S.W.3d 560, 564 (Tex. App.—Beaumont 2009, pet. denied) ("To be sufficient, a curriculum vitae need not be on a separate piece of paper."); *Harris Cnty. Hosp. Dist. v. Garrett*, 232 S.W.3d 170, 178 (Tex. App.—Houston [1st Dist.] 2007, no pet.); *see also Univ. of Tex. Med. Branch at Galveston v. Simmons*, No. 14-09-00246-CV, 2009 WL 4810296, at *3 (Tex. App.—Houston [14th Dist.] Dec. 15, 2009, no pet.) (mem. op.) ("[N]othing in the statute requires that a [CV] be produced as a separate document."); *Carreras v. Marroquin*, No. 13-05-00082-CV, 2005 WL 2461744, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 6, 2005,

case with prejudice, awarding costs and attorney's fees to the defendant, and ordering the forfeiture of any applicable cost bond necessary to pay that award."). However, the *Palacios* Court applied an earlier version of the statute which, unlike the current version, unambiguously required dismissal whenever the claimant failed to serve *either* an expert report *or* a CV. *See id.* (applying Act of May 8, 1995, 74th R.S., ch. 140, § 1, sec. 13.01(d), (e), 1995 Tex. Gen. Laws 985, 986 (former TEX. REV. CIV. STAT. ANN. art. 4590i, § 13.01(d), (e)), *repealed by* Act of June 2, 2003, 78th Leg., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884). In any event, Garza does not dispute that the failure to timely file a CV with the expert report would theoretically constitute grounds for dismissal under § 74.351(b).

pet. denied) (mem. op.) ("The statute does not expressly prohibit a claimant from including the [CV] within the body of the report, as was done in this case."). Instead, it contends that the requirement was not satisfied in this case because Schmidt "failed to specify [his] education, work history, board certification, or other certifications (if any)" in his report.

Nexion further asserts that the untimeliness of its motion to dismiss does not preclude dismissal because the motion challenged the existence of Schmidt's CV, not its "sufficiency." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a); *Scoresby*, 346 S.W.3d at 556 (noting that a sheet of paper with nothing more than "expert report" written on it "would mock the [TMLA]'s requirements" and constitute "no report" such that the trial court would not be authorized to grant an extension); *Ogletree v. Matthews*, 262 S.W.3d 316, 317 (Tex. 2007) (rejecting hospital's argument that it "had no duty" to object to the plaintiff's expert report "within the twenty-one days allowed by statute" "because, in effect, no report had been served due to the absence of a physician's opinion on causation").

Even assuming Nexion's complaint regarding Schmidt's CV was timely, we cannot conclude the trial court abused its discretion in rejecting it. "We construe a statute's words according to their plain and common meaning unless they are statutorily defined otherwise, a different meaning is apparent from the context, or unless such a construction leads to absurd or nonsensical results." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 501 (Tex. 2015). The TMLA does not define CV. The dictionary defines it as "a short account of one's career and qualifications prepared typically by an applicant for a position." MERRIAM-WEBSTER'S ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/curriculum%20vitae (last visited Apr. 16, 2025).

In *Carreras*, we determined that the trial court was within its discretion to find the

CV requirement was satisfied where the expert's report merely "summarize[d] his education" and stated "I am Board Certified," "I am a Certified Medical Review Officer," and "I am a Certified Independent Medical Examiner." 2005 WL 2461744, at *2 (noting that "[f]rom these statements, the trial court could have easily determined that the expert is currently practicing medicine"). We noted that "[t]he purpose of the [CV] requirement is to permit the trial court to perform its 'gatekeeper' function by assessing the qualifications, experience, and expertise of the expert," and "[a]lthough the report could be more detailed," it "contained sufficient information to determine whether the expert was qualified." *Id.*

The San Antonio Court of Appeals reached the same conclusion where an expert's report stated he is "a board certified cardio thoracic surgeon who actively practices medicine in San Antonio" and is "familiar with the standard of care for the evaluation and treatment of venous diseases as well as peripheral vascular diseases." *Laredo Med. Ctr. v. Melendez*, No. 04-13-00308-CV, 2013 WL 6255741, at *4 (Tex. App.—San Antonio Dec. 4, 2013, no pet.) (mem. op.). The Fourteenth Court of Appeals also reached the same conclusion where the expert's report stated:

> I am qualified to render the opinions expressed in this report based on my education, training, and experience. I am a Board Certified Orthopedic Surgeon practicing in Houston, Texas. I currently attend at University General Hospital, Renaissance Northeast Surgery Center, and Surgery Specialty Hospitals of America, all of which are located in the Houston area. I am also the Medical Director for Lone Star Orthopedics, which is located in Houston. My [CV] is attached.
>
> I have been performing surgeries since 1994, and am very familiar with the post-surgical treatment and care of surgical patients. I perform over 250 surgeries a year, on average, including cases that involve autograft; for example, arthroscopic osteochondral autograft transfer, cervical discectomy and fusion, lumbar discectomy and fusion, skeletal osteotomies with autograft and instrumentation, as well as a variety of general orthopedic surgeries.

8

*Simmons*, 2009 WL 4810296, at *3 (finding "[t]he trial court acted within its discretion in concluding that the expert report contained sufficient information to determine whether the expert was qualified and, thus, satisfied the [CV] requirement"). The Fourteenth Court also found that the following paragraph contained within an expert's report "qualifies as a CV" for purposes of the statutory requirement:

> I attended medical school at State University of New York from 1959 through 1963. Upon graduating from medical school, I entered the United States Army where I first completed a rotating internship at Martin Army Hospital in Fort Benning, Georgia. I then completed my residency at Brooke Army Hospital in San Antonio, Texas. After completing my residency, I was assigned first as a Brigade Surgeon and ultimately as a Battalion surgeon in Viet Nam where I was wounded and awarded the Purple Heart. After returning from Viet Nam and recovering from my injuries, I then served as the Chief of Hospital Clinics in Japan for three (3) years. After leaving the Army, I began private practice in 1973 and I have continued in private practice through the present.

*Ibrahim v. Gilbride*, No. 14-09-00938-CV, 2010 WL 5064430, at *3 (Tex. App.—Houston [14th Dist.] Dec. 9, 2010, no pet.) (mem. op.) (concluding, nevertheless, that the trial court erred in determining the expert was qualified). More recently, that court concluded that printouts from a physician's webpage stating that "he is board certified in internal medicine, that he taught and trained students in that subject area, [] that he specializes in hypertension, diabetes mellitus, and heart disease, and that he holds advanced positions at University General Hospital" satisfied the CV requirement. *Aquatic Care Programs, Inc. v. Cooper*, 616 S.W.3d 615, 626 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (rejecting appellant's argument that the printouts are "not actually a CV").

The information provided in Schmidt's report is comparable to that provided in these cases. Schmidt explained in his report that he has "over 33 years of medical experience as a physician," is currently practicing as a physician, and is licensed in four states. He explained that, in his practice, he has treated "a large number of patients" with

9

medical history similar to that of the deceased. He stated that he is familiar with the standards for "skilled nursing facilities" and their employees in treating the specific types of injury at issue in this case. The trial court was within its discretion to determine that these statements constituted "a short account of [Schmidt's] career and qualifications" so as to satisfy the CV requirement.

Nexion complains that the report did not specify (1) "where or whether [Schmidt] went to medical school"; (2) "where or whether he completed a residency"; (3) "where or whether he completed a Fellowship"; (4) "whether he is Board Certified"; (5) "where he has practiced"; (6) "at what facilities he has held privileges, or for how long"; or (7) "the nature of any such privileges." It argues in its reply brief that these details are "critical for the trial court in performing its 'gatekeeper' role." *See Carreras*, 2005 WL 2461744, at *2. But it cites no authority establishing that these particular details are necessary for a report to satisfy the CV requirement. Instead, the case law establishes that such details are not always necessary. *See Cooper*, 616 S.W.3d at 626 (report did not specify whether or where expert went to medical school, whether or where he completed a residency or fellowship, or at what facilities he has held privileges); *Melendez*, 2013 WL 6255741, at *4 (same); *Simmons*, 2009 WL 4810296, at *3 (same).

It is important to note that, although Nexion takes issue with the level of detail in the report regarding Schmidt's qualifications, it has never disputed that Schmidt is, in fact, qualified to opine on the substantive issues involved in Garza's suit. At the very least, the information provided in Schmidt's report allowed Nexion to object to Schmidt's qualifications if it felt they were inadequate. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.402(b) (stating that a person may qualify as an expert witness under the TMLA "only

if the person: (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider . . . at the time the testimony is given or was practicing that type of health care at the time the claim arose; (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care"); *id.* § 74.402(c) ("In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness: (1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and (2) is actively practicing health care in rendering health care services relevant to the claim."); *see also id.* § 74.402(f) ("A pretrial objection to the qualifications of a witness under this section must be made not later than the later of the 21st day after the date the objecting party receives a copy of the witness's [CV] or the 21st day after the date of the witness's deposition."). Dismissal under these circumstances would not be consistent with the plain language or underlying purposes of the statute. *See Scoresby*, 346 S.W.3d at 554; *Carreras*, 2005 WL 2461744, at *2.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Nexion's motion to dismiss on grounds that Garza "served no [CV]" as required by the TMLA. We overrule Nexion's issues on appeal. In light of our conclusion, we need not address Garza's argument that Nexion waived its right to dismissal by its litigation conduct. *See* TEX. R. APP. P. 47.1.

11

### III.  CONCLUSION

The trial court's judgment is affirmed.

YSMAEL D. FONSECA<br>
Justice

Delivered and filed on the
17th day of April, 2025.