Opinion issued August 21, 2025



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-24-00296-CV

————————————

**SHEILA FOSTER, Appellant**

**V.**

**SPRING HOSPITAL, HEIGHTS HOSPITAL, AND NORTH HOUSTON SURGICAL HOSPITAL, LLC, Appellees**

On Appeal from the 295th District Court
Harris County, Texas
Trial Court Case No. 2022-81813

## MEMORANDUM OPINION

This appeal arises from a trial court's dismissal of a health care liability claim (HCLC) for failure to serve a medical expert report under the Texas Medical Liability Act (TMLA).[1]

A patient being discharged from a hospital the day after knee surgery was injured in a fall outside the hospital's front entrance as staff assisted her in transferring from a wheelchair to a car. The patient brought a negligence action against the hospital. The issue presented is whether the claim constitutes a HCLC—thus requiring an expert report.

We conclude that the patient's claim fits within the statutory definition of a HCLC. Therefore, she was required to serve the hospital with an expert report. Because it is undisputed that she did not, the trial court was statutorily required to dismiss her suit. We affirm the trial court's dismissal.

## Background

Sheila Foster underwent surgery on her right knee at Spring Hospital. During discharge the next day, hospital staff directed Foster's husband to drive to the front of the hospital to pick up Foster.

Hospital staff brought Foster outside to the waiting car in a wheelchair and positioned her at a passenger-side seat. During the transfer, a staff member lifted Foster's left leg up into the car—a sport–utility vehicle. This action resulted in

---

[1]    *See* TEX. CIV. PRAC. & REM. CODE § 74.351.

2

Foster shifting her weight to her right leg. Foster's right knee—which was numb and immobilized from surgery—buckled, and she fell to the ground.

In her fall, Foster's knee bent backwards under her body, and she twisted her back. She immediately felt pain and screamed. Foster contacted her physician, who sent her to the emergency room. Foster later underwent back surgery. She attributes her need for back surgery to injuries she sustained in the fall.

Foster sued the hospital[2] under an ordinary negligence theory. She alleged that the hospital's staff "worked as nurses and assistants whose job it was to help discharged patients out to their cars and leave the hospital without any further injury." She alleged that staff failed to recognize that she had recently undergone surgery on her right knee and could not use her knee like a person of "ordinary health." And they failed to bring her to the driver's-side back seat—where she could have stood on her left leg to get into the car. Further, according to Foster, hospital staff breached a duty of care in lifting her and allowing her to fall. She alleged that the staff's acts and omissions caused her injuries and that the hospital was vicariously liable under the doctrine of respondeat superior.

---

[2] Foster originally named "Spring Hospital, Heights Hospital, and North Houston Surgical Hospital, LLC" as defendants. She later amended her petition to correct the named defendants to "North Houston Surgical Hospital, LLC, d/b/a Spring Hospital and d/b/a The Heights Hospital." However, the case remained as previously styled.

3

The hospital filed a motion to dismiss Foster's suit. It argued that her claim constitutes a HCLC, that she failed to serve the statutorily required expert report, and that therefore the TMLA mandated dismissal.

Foster argued that the incident occurred after she was released from medical care and during assistance by non–medical staff, whose role was to assist discharged patients to vehicles. According to Foster, her claim sounds in ordinary negligence, not medical malpractice, and thus no expert report was required.

After conducting a hearing, the trial court granted the hospital's motion and dismissed Foster's suit.

## Health Care Liability Claim

In her first and second issues, Foster argues that the trial court erred in concluding that her claim is a HCLC and dismissing her suit for failure to serve an expert report. In her third issue, Foster asserts that the trial court's dismissal "violated" section 256.002 of the Texas Health and Safety Code. We address these related issues together.

## A. Standard of Review and Legal Principles

The TMLA "is a statutory framework intended to reduce excessive frequency and severity of medical tort claims without unduly restrict[ing] a claimant's rights." *Leibman v. Waldroup*, 715 S.W.3d 367, 373 (Tex. 2025) (internal quotations omitted). "To that end, the [TMLA] strikes a careful balance between eradicating

4

frivolous claims and preserving meritorious ones by distinguishing ordinary tort claims from statutorily defined HCLCs and imposing additional requirements upon plaintiffs asserting the latter." *Id.* (internal quotations omitted).

The TMLA defines a HCLC as a "cause of action against a health care provider . . . for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

The statute defines a "health care provider" as "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care." *Id.* § 74.001(a)(12)(A). This includes hospitals and hospital systems, along with their employees, independent contractors, and agents "acting in the course and scope of the employment or contractual relationship." *Id.* § 74.001(a)(11), (a)(12)(B).

Whether a claim constitutes a HCLC is a question that we review de novo. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). We focus on the claim's "underlying nature," not on the plaintiff's label or legal theory. *Id.* We consider the "operative facts underlying the claim that are relevant to the alleged injury," as drawn from the pleadings, motions and responses, and relevant evidence properly admitted. *Id.* at 885–86 (internal quotations omitted).

5

If the operative facts "*could* support [a] claim[] against a . . . health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care, then the TMLA applies." *Id*. at 885. A "claimant cannot avoid the [TMLA's] application by artfully pleading claims for ordinary negligence or premises liability." *Id.* at 886. "[T]he breadth of the TMLA creates a rebuttable presumption that a patient's claim[] against a . . . health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement" is a HCLC. *Rogers v. Bagley*, 623 S.W.3d 343, 350 (Tex. 2021) (internal quotations omitted).

If a cause of action is a HCLC, the TMLA requires the claimant to serve the defendant with an expert report describing the applicable standard of care, the manner in which the defendant's conduct failed to meet that standard, and the causal relationship between that failure and the claimant's harm. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (r)(6); *Collin Creek*, 671 S.W.3d at 885. If a claimant fails to serve a compliant report within 120 days after the defendant files its original answer, the trial court, on the motion of the affected health care provider, must dismiss the claim with prejudice and award the provider reasonable attorney's fees and costs. TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b); *Collin Creek*, 671 S.W.3d at 885.

**B. Foster's Claim is a HCLC**

Based on the above, Foster's claim is a HCLC if (1) the hospital is a health care provider, (2) her claim is for treatment, lack of treatment, or another departure from accepted standards of medical care, health care, safety or professional or administrative services directly related to health care, and (3) her claim is that the hospital's acts or omissions proximately caused her injuries. *See Collin Creek*, 671 S.W.3d at 886; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

The first element is satisfied. The defendant hospital and its staff meet the statutory definition of a "health care provider." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(11), (a)(12) ("health care provider" includes hospital and its employees, independent contractors, and agents "acting in the course and scope of the employment or contractual relationship"); *Collin Creek*, 671 S.W.3d at 886. Foster does not dispute that the staff members assisting her were "acting in the course and scope of the[ir] employment or contractual relationship" with the hospital. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(12)(B).

The third element is also satisfied. Foster alleges that the acts or omissions of hospital staff proximately caused her injuries. *See id.* § 74.001(a)(13); *Collin Creek*, 671 S.W.3d at 886–87; *Rogers*, 623 S.W.3d at 349.

Whether Foster's claim is a HCLC therefore turns on the second element— whether her claim is for treatment, lack of treatment, or another departure from

accepted standards of medical care, health care, safety or professional or administrative services directly related to health care. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13); *Collin Creek*, 671 S.W.3d at 887; *Rogers*, 623 S.W.3d at 350.

The hospital argues that the second element is satisfied because Foster's claim concerns a departure from accepted safety standards.

### 1. *Safety Standards*

"For a safety standards-based claim to be an HCLC there must be a substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). "The pivotal issue in a safety standards-based claim is whether the standards on which the claim is based implicate the defendant's duties as a health care provider, including its duties to provide for patient safety." *Id.* at 505.

The TMLA does not define "safety," but the supreme court has defined it as "being secure from danger, harm or loss." *Collin Creek*, 671 S.W.3d at 890 (internal quotations omitted). The TMLA defines "health care" as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10).

In *Ross*, the Texas Supreme Court set forth the following non-exclusive list of factors to consider in determining whether this "substantive nexus" exists:

1. Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2. Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special medical care was implicated;

3. At the time of the injury was the claimant in the process of seeking or receiving health care;

4. At the time of the injury was the claimant providing or assisting in providing health care;

5. Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6. If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; [and]

7. Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Ross*, 462 S.W.3d at 505[3]; *see City of Houston v. Houston*, 608 S.W.3d 519, 530 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (not all *Ross* factors need apply).

In addition to these factors, "[t]he necessity of expert testimony to support or refute the allegations at issue is a factor in assessing the nature of a claim against a

---

[3] "[C]ourts may address the second element using a single *Ross* analysis," whether the operative facts concern alleged departures from (1) health care standards that implicate safety; (2) safety standards with a direct relationship to the provision of health care; and/or (3) safety standards with a substantive nexus to the provision of health care. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 887 (Tex. 2023) (if claim alleges departures from both safety and health care standards, or it is unclear, "courts need not spend time and resources trying to parse whether the claim falls on the health care or safety side of the line"). Thus, "*Ross* applies to all safety standard claims." *See id.*

health care provider." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 182 (Tex. 2012). However, the fact that expert testimony may not ultimately be necessary to support a verdict at trial does not necessarily mean that the claim is not a health care liability claim. *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005).

The supreme court's analysis in *Collin Creek* illustrates an application of the *Ross* factors, along with the necessity of expert testimony. 671 S.W.3d at 884, 894. There, a resident of an assisted living facility was injured in a fall outside the front entrance of the facility as staff assisted her to a private vehicle. *Id.* at 884, 892. Staff transported the resident on the seat of a rolling walker down a sidewalk. *Id.* at 884. The walker lodged in a crack in the concrete and tipped over—causing the resident to fall and suffer injuries that resulted in her death. *Id.* The resident's family sued the facility under negligence and premises-liability theories. *Id.* The facility moved to dismiss the suit, arguing that the family's cause of action was a HCLC and that they had failed to timely serve an expert report. *Id.*

The first three *Ross* factors supported the required nexus in *Collin Creek*. The injury occurred while facility staff assisted the resident to her daughter's car. *Id.* at 891–92 (alleged negligence occurred while defendant performed tasks to protect patient from harm). The location of the injury—outside the facility's front entrance—was a path through which facility residents were commonly transported and transferred into vehicles. *Id.* at 892. The facility had an obligation to prevent

10

falls in the area of the front entrance when staff assistance was required. *Id.* (injuries occurred in place where patients might be while receiving care, so that obligation of provider to protect persons who require special medical care was implicated). And the resident was receiving health care from the facility—assistance with ambulating—at the time she fell. *Id.* (claimant receiving health care at time of injury).

The fifth and seventh *Ross* factors also supported the required nexus in *Collin Creek*. The standard of care at issue arose from the facility's professional duties to safely provide assistance with ambulation. *Id.* at 893–94. In addition, the alleged negligence involved the violation of statutes and regulations imposed on health care providers that required them to provide minimum acceptable levels of care and protect resident health and safety. *See id.* at 893–95.

There, the sixth factor was also satisfied in that the walker was of a type used in providing care—and its manner of use was "a question well suited to expert testimony." *Id.* at 894.

The supreme court held in *Collin Creek* that these factors demonstrated a substantive nexus between the provision of health care and the alleged violations of safety standards that led to the resident's injuries and death. *Id.* at 891. Thus, the family's cause of action was a HCLC and an expert report was required. *Id*. at 895.

11

## 2. *Foster's Claim*

Here, the operative facts are that during Foster's discharge from the hospital the day after knee surgery, hospital staff directed her husband to drive to the front of the hospital to pick her up. Hospital staff then brought Foster outside in a wheelchair to her family's waiting car. A staff member positioned Foster at a passenger-side seat and assisted her with transferring into the car. The staff member lifted Foster's left leg up into the sport–utility vehicle. This action resulted in Foster shifting her weight to her right leg. Foster's right knee—which was numb and immobilized from surgery—buckled. She fell to the ground and was injured, requiring back surgery.

Foster states in her brief that the complained-of acts and omissions occurred "while being discharged from the hospital" and in the course of the hospital's "nurses and assistants" helping her—a post-surgical patient with limited mobility—to her car so that she could "leave the hospital without further injury."

Foster argues that her "claims are directly related to the hospital's failure to comply with [its] statutory duty" at section 256.002 of the Health and Safety Code. According to Foster, the purpose of section 256.002 "is to protect patients during the vulnerable transition from hospital care to home." And it "requires hospitals to ensure patient safety during discharge" and "imposes a duty on hospitals to provide safe and appropriate discharge procedures including assistance to patients leaving the facility."

12

Thus, not only does Foster not address the *Ross* factors in her brief, but she largely concedes the substantive nexus between the hospital's provision of health care and the alleged violation of safety standards that led to her injuries. *See id.* at 891.

With respect to the hospital's provision of health care, the first, second, and third *Ross* factors support the required nexus. *See Ross*, 462 S.W.3d at 505.

First, Foster's injuries occurred while hospital staff assisted her to her husband's car. *See Collin Creek*, 671 S.W.3d at 891–92. And Foster required assistance with transferring from the wheelchair to the car, which hospital staff undertook to protect her from further injury. *See id.* at 892; *Ross*, 462 S.W.3d at 505 (alleged negligence occurred while defendant performed tasks to protect patient from harm).

Second, Foster's injuries occurred outside the front entrance of the hospital "while being discharged," and she asserts that the hospital had a duty to protect her— a patient who required special medical care—from injury while she transferred to her car. *See Ross*, 462 S.W.3d at 505 (injuries occurred in location where patients might be while receiving care such that health care provider's obligation to protect persons who require special medical care was implicated); *see also Collin Creek*, 671 S.W.3d at 892 (noting that residents were commonly transported and transferred into vehicles through front entrance and that staff was provided to prevent falls).

Third, Foster was in the process of receiving health care at the time of her injury. *See Ross*, 462 S.W.3d at 505 (whether claimant was seeking or receiving health care at time of injury); *see also Collin Creek*, 671 S.W.3d at 892. Foster states that she was "being discharged" from medical care at the time of her injury. And it is undisputed that Foster—a post-operative patient—was being assisted to her car under the care and direction of hospital "nurses and assistants." *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10) ("health care" includes any act by any health care provider for, to, or on behalf of patient during patient's medical care); *see also Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011) ("'[H]ealth care' involves more than acts of physical care and medical diagnosis and treatment.").

Foster complains that she "had been released from the doctor's care," was "no longer under the care of her physician or a healthcare provider." She argues that she was instead under the "direction of a staff member [who] did not directly provide medical care or treatment to [her]."

As discussed above, the hospital and its staff are statutorily defined as "health care providers." Thus, Foster was under the care of a health care provider at the time of her injury.

With respect to safety standards, the fifth *Ross* factor requires us to consider whether the alleged negligence is based on safety standards arising from professional duties owed by the health care provider. *See Ross*, 462 S.W.3d at 505.

Foster's allegations are that (1) hospital "nurses and assistants" failed to recognize that she had recently undergone surgery on her right knee and could not bear weight on the leg like a person of "ordinary health"; (2) staff failed to use proper judgment in transferring her into the car; and (3) staff failed to exercise proper care in lifting her into the car and allowing her to fall. Thus, Foster alleges that hospital staff breached safety standards that arise from their duty to exercise sound professional judgment, i.e., comply with the standard of care with respect to handling a patient with post-surgical limitations. *See id.*

In addition, the standard of care applicable to hospital nurses and staff in handling a newly post-operative knee patient is an issue that would benefit from expert testimony. *See, e.g.*, *Tenet Hosps. Ltd. v. Barajas*, 451 S.W.3d 535, 548 (Tex. App.—El Paso 2014, no pet.) (concluding expert reports as to whether hospital nurse breached the standard of care by not seeking assistance of other nurses or aides to assist newly post-operative knee patient with transfer from recliner chair to bedside commode provided basis for trial court to conclude that patient's claim had merit). It is not within the common knowledge of the general public to determine the abilities of newly post-operative knee patients in weakened conditions to ambulate

15

or bear weight or the standards for assisting them. In addition, the causal connection between Foster's fall and her alleged need for back surgery are matters that would benefit from expert testimony.

Similarly, the seventh *Ross* factor requires us to consider whether the alleged negligence occurred in the course of the hospital taking action, or failing to take action, necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies. *See Ross*, 462 S.W.3d at 505.

Section 256.002, on which Foster relies, requires hospitals to "adopt and ensure implementation of a policy to identify, assess, and develop strategies to control risk of injury to patients and nurses associated with the lifting, transferring, repositioning, or movement of a patient." TEX. HEALTH & SAFETY CODE § 256.002(a). This policy requires a hospital to educate its staff on identifying, assessing, and controlling the risk of injury during "patient handling." *Id.* § 256.002(b)(2).

As noted above, Foster concedes on appeal that her "claims are directly related to the hospital's failure to comply with [its] statutory duty" in section 256.002 of the Health and Safety Code. We agree that Foster's allegations involve departures from protocols that are statutorily imposed on hospitals, as well as safety procedures in lifting, transferring, repositioning, and moving a patient, and identifying and assessing risks in patient handling. These are not allegations of ordinary negligence.

16

On balance, the applicable *Ross* factors[4] weigh in favor of concluding that there is a substantive nexus between the safety standards allegedly violated and the provision of health care. *See Collin Creek*, 671 S.W.3d at 891; *Ross*, 462 S.W.3d at 505. Foster bore the burden of rebutting the presumption that her negligence claim is a HCLC. *See Baylor Scott & White, Hillcrest Med. Ctr. v. Weems*, 575 S.W.3d 357, 363 (Tex. 2019). And she has not done so.

We conclude that Foster's claim constitutes a HCLC. *See Collin Creek*, 671 S.W.3d at 895; *see also* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13).

## C.      Expert Report Requirement and Dismissal

Because Foster's claim against the hospital is a HCLC controlled by Chapter 74 of the Texas Civil Practice & Remedies Code, she was required to serve the hospital with an expert report and curriculum vitae within 120 days after the hospital filed its answer. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (b). It is undisputed that Foster did not do so. Therefore, the trial court was statutorily required to grant the hospital's motion to dismiss her claim. *See id.*; *Collin Creek*, 671 S.W.3d at 885.[5]

---

[4]      The fourth and sixth *Ross* factors are inapplicable. *See Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 505 (Tex. 2015).

[5]      Foster argues that the trial court "violated" section 256.002 of the Health and Safety Code by dismissing her claim under section 74.351. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b); TEX. HEALTH & SAFETY CODE § 256.002. Even if we were to conclude that any conflict existed, Chapter 74 of the Civil Practice and Remedies Code states that, "[i]n the event of a conflict between this chapter and another law, . . . this chapter controls to the extent of the conflict." TEX. CIV. PRAC. & REM. CODE § 74.002(a).

We hold that the trial court did not err in dismissing Foster's claim for failure to file an expert report.

We overrule Foster's three issues.

## Conclusion

We affirm the trial court's order of dismissal in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Caughey and Johnson.