**Opinion issued September 18, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-24-00502-CV

———————————

**CYNTHIA SPILLER, ON BEHALF OF INCAPACITATED INDIVIDUAL, BRANDON MYKHAIL MANUEL, Appellant**

**V.**

**WEST OAKS HOSPITAL, INC., TEXAS WEST OAKS HOSPITAL, L.P., AND TEXAS HOSPITAL HOLDINGS, LLC, Appellees**

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-75558**

---

## MEMORANDUM OPINION

Appellant Cynthia Spiller alleges that Brandon Mykhail Manuel, an incapacitated adult who suffers psychiatric disorders and for whom she serves as guardian, was sexually assaulted by fellow patients while staying at a residential

rehabilitation hospital. Spiller filed suit against the hospital and its corporate parents on Manuel's behalf, asserting negligence claims for various failures to implement and enforce safety standards. The defendants moved to dismiss, arguing Spiller did not file the expert report required under the Texas Medical Liability Act ("TMLA") to support her health care liability claims ("HCLC"). *See* TEX. CIV. PRAC. & REM. CODE § 74.351. The trial court granted the motion, and Spiller appealed. Because we conclude Spiller's claims are HCLCs under the TMLA, we affirm.

## Background

Spiller alleged as follows in her original petition. Appellee West Oaks Hospital, Inc. is a "residential rehabilitation treatment center," and its parent companies are Appellees West Oaks Hospital, L.P. and Texas Hospital Holdings, LLC (Appellees collectively referred to as "West Oaks"). Manuel was admitted to West Oaks "to heal in a safe environment after a mental-health episode." Upon admission, hospital staff identified Manuel as "on watch for sexual victimization." While in his room at West Oaks, Manuel was sexually assaulted by his roommate and four other patients. Spiller claims the sexual assault occurred because West Oaks staff left Manuel unattended "near dangerous patients" and "no hospital staff were present and monitoring patients." Spiller alleges West Oaks responded to the assault by "injecting Manuel with a sedative and sending him home in a taxi, drugged and terrified." Spiller asserts West Oaks was negligent because it failed to properly

2

supervise Manuel and other patients and failed to implement policies protecting patients from sexual misconduct and for hiring, training, supervising, and retaining qualified employees.

West Oaks filed an answer. If Spiller were required to file a TMLA expert report, it was due "not later than the 120th day" after the answer was filed. *See id.* § 74.351(a). When no report was filed, West Oaks filed a TMLA motion to dismiss. Spiller did not respond to West Oaks' motion. The trial court granted the motion, and Spiller now appeals.

## Analysis

In two issues, Spiller argues the trial court erred by dismissing her claims because they are not HCLCs under the TMLA.

### A. Standard of Review

Whether a claim constitutes a HCLC is a question that we review de novo. *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023). We focus on the claim's "underlying nature," not on the plaintiff's label or legal theory. *Id.* We consider the operative facts underlying the claim that are relevant to the alleged injury, as drawn from the pleadings, motions and responses, and relevant evidence properly admitted. *Id.* at 885–86. If the operative facts "*could* support [a] claim[] against a . . . health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly

related to health care, then the TMLA applies." *Id.* at 885 (emphasis in original, internal quotations omitted). A "claimant cannot avoid the [TMLA's] application by artfully pleading claims for ordinary negligence or premises liability." *Id.* at 886. "[T]he breadth of the TMLA creates a rebuttable presumption that a patient's claim[] against a . . . health care provider based on facts implicating the defendant's conduct during the patient's care, treatment, or confinement" is a HCLC. *Rogers v. Bagley*, 623 S.W.3d 343, 350 (Tex. 2021) (internal quotations omitted).

## B.    HCLCs under the TMLA

The TMLA defines a HCLC as:

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13). This definition includes three elements: "(1) the defendant is a physician or health care provider; (2) the claim is for treatment, lack of treatment, or another departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission proximately caused the claimant's injury or death." *Collin Creek*, 671 S.W.3d at 885.

4

Spiller does not dispute West Oaks' status as a "health care provider" under the TMLA, and she alleges West Oaks' conduct was the proximate cause of Manuel's harm. Therefore, the only question before us is whether Spiller's claims concern the "treatment, lack of treatment, or another departure from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care." *Id.* If so, they are HCLCs, and an expert report was required.

The parties appear to agree, as do we, that we should answer the question by evaluating Spiller's claims under the "safety" prong of this element. Thus, we consider the relationship between Spiller's allegations of departures from accepted safety standards and the provision of health care, and more specifically whether that relationship is sufficiently close for her claims to fall within the TMLA. *See id.* at 887–88 ("A recurring issue in determining whether claims fall under the safety prong is how closely related the safety standards must be to the provision of health care for the claim to qualify as a health care liability claim.").

To come within the TMLA, a safety-standards claim does not need a "direct relationship" to health care; instead, claims fall within the TMLA's safety-standards prong if there is a "substantive nexus between the safety standards allegedly violated and the provision of health care." *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 504 (Tex. 2015). We consider the following seven non-exclusive factors

articulated in *Ross* to determine whether safety-standards claims have a substantive

nexus to the provision of health care:

1.  Did the alleged negligence of the defendant occur in the course of the defendant's performing tasks with the purpose of protecting patients from harm;

2.  Did the injuries occur in a place where patients might be during the time they were receiving care, so that the obligation of the provider to protect persons who require special, medical care was implicated;

3.  At the time of the injury was the claimant in the process of seeking or receiving health care;

4.  At the time of the injury was the claimant providing or assisting in providing health care;

5.  Is the alleged negligence based on safety standards arising from professional duties owed by the health care provider;

6.  If an instrumentality was involved in the defendant's alleged negligence, was it a type used in providing health care; or

7.  Did the alleged negligence occur in the course of the defendant's taking action or failing to take action necessary to comply with safety-related requirements set for health care providers by governmental or accrediting agencies?

*Id.* at 505.

## C.    Spiller's claims are HCLCs

The first, second, third, and fifth *Ross* factors[1] support the required nexus because the alleged negligence occurred while West Oaks was performing tasks to protect Manuel from harm, in a place where Manuel would go to receive care and while he was receiving care, and is based on West Oaks' alleged failure to implement and comply with proper safety standards.

Spiller alleges West Oaks is a "residential rehabilitation treatment center" to which Manuel was admitted "to heal in a safe environment after a mental health episode." She claims the assault was committed in Manuel's room by his roommate and other patients, after West Oaks staff had placed Manuel "on watch for sexual victimization." Spiller asserts West Oaks breached its duties to Manuel by failing to properly supervise him and other patients, implement policies to protect patients, and hire, train, and supervise employees.

All of these safety-standards allegations have a substantive nexus to the provision of health care in this residential-treatment-center context. Manual was a residential patient staying at West Oaks to receive health care. *See* TEX. CIV. PRAC. & REM. CODE § 74.001(a)(10) ("'Health care' means any act or treatment performed

---

[1]    The fourth and sixth *Ross* factors are inapplicable to this case, so we do not consider them. *Ross*, 462 S.W.3d at 505. The parties do not address the seventh *Ross* factor, and we determine it is unnecessary to our disposition to consider this factor. *See City of Houston v. Houston*, 608 S.W.3d 519, 530 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (not all *Ross* factors need apply).

or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement."). The acts of identifying Manuel as a potential victim of sexual violence and assigning him a roommate in accordance with that identification were for the purpose of protecting Manuel from harm while he was residing at the hospital to receive health care. *See Nw. Tex. Healthcare Sys. v. Erwin*, No. 07-22-00020-CV, 2022 WL 2916086, at *2–3 (Tex. App.—Amarillo July 25, 2022, pet. denied) (mem. op.) ("[P]rofessional staff present at the facility must exercise their independent medical judgment and training when determining how and when to treat the differing patients within its confines."). So was the implementation of safety policies and the hiring, training, and supervision of employees.

Spiller argues her claims do not have a substantive nexus to the provision of health care because "[t]he expectation of constant, round-the-clock supervision in a patient's private room is impractical and beyond the standard scope of care," the "nature of a provider's duties typically do not extend to continuously watching over a patient in their room," and Manuel was not "under the care of a physician" when the assault occurred. We disagree.

The question of whether the standard of care applicable to a residential-treatment hospital requires "round-the-clock supervision"—particularly for a patient identified as "on watch for sexual victimization"—goes directly to the provision of

8

health care at that hospital. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 850 (Tex. 2005) (in nursing-home context, "Diversicare's training and staffing policies and supervision and protection of Rubio and other residents are integral components of Diversicare's rendition of health care services to Rubio"); *Erwin*, 2022 WL 2916086, at *2–3 (concluding claims regarding patient admitted to room at hospital and assaulted by another patient possibly under the influence of narcotics was a HCLC; "the Hospital's supervision of her and her assailant were inseparable from the purpose underlying their presence in the hospital, that purpose being the provision of health care services"); *Vill. Green Alzheimer's Care Home, LLC v. Graves*, 650 S.W.3d 608, 625 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) ("Residential facilities supervise daily activities . . . [and] must evaluate whether some patients require enhanced supervision and more staff to protect them from injuring themselves or possibly other patients or staff.").

Moreover, the fact that a physician was not actively providing care to Manuel at the time of the assault does not negate the substantive nexus between the alleged safety violations and the provision of health care. *See Collin Creek*, 671 S.W.3d at 890 ("[T]he underlying facts need not indicate that a health care provider was providing medical or health care and did so negligently for a claim to fall under the safety prong. Rather, the safety prong applies when there are facts indicating that the defendant did not follow standards implicating its duties as a health care

9

provider . . . to provide for patient safety as measured by the *Ross* factors." (cleaned up)); *see also Omaha Healthcare Ctr., LLC v. Johnson*, 344 S.W.3d 392, 395 (Tex. 2011) ("'[H]ealth care' involves more than acts of physical care and medical diagnosis and treatment."). Manuel was at West Oaks "to heal in a safe environment after a mental health episode," meaning he was there for health care regardless of whether a physician was in his room at the time of the assault. As the Supreme Court of Texas said in another case involving two of the West Oaks defendants in this case: "Patients at West Oaks are there not merely for shelter, but also for care and treatment." *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 183 (Tex. 2012).

Finally, the safety standards that apply to a residential-rehabilitation-treatment hospital regarding the supervision and protection of mental-health patients staying at the hospital are not within a layperson's common knowledge and would benefit from expert testimony, further supporting that Spiller has brought HCLCs. *See id.* at 182 ("[I]f expert medical or health care testimony is necessary to prove or refute the merits of the claim against a physician or health care provider, the claim is a health care liability claim."); *Foster v. Spring Hosp.*, No. 01-24-00296-CV, 2025 WL 2413076, at *6 (Tex. App.—Houston [1st Dist.] Aug. 21, 2025, no pet. h.) (mem. op.) (concluding standard of care applicable to hospital staff in escorting post-operative knee patient to his vehicle "is an issue that would benefit from expert testimony").

10

We hold that the *Ross* factors support the conclusion that Spiller's claims are HCLCs. *See Collin Creek*, 671 S.W.3d at 891; *Ross*, 462 S.W.3d at 505. The TMLA thus required Spiller to serve an expert report. Because she did not, the trial court was required to grant West Oaks' motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(b). We overrule Spiller's first and second issues.

## Conclusion

We affirm the trial court's judgment.

Andrew Johnson
Justice

Panel consists of Justices Guerra, Guiney, and Johnson.